Lowell JUNKINS, State Senator; Don Avenson, State Representative; C.W. (Bill) Hutchins and Joe Welsh, State Senators; Robert C. Arnould, John H. Connors and Richard W. Welden, State Representatives; Individually and in Their Representative Capacity as Members of the 71st General Assembly of Iowa, Plaintiffs–Appellants,

v.

Terry E. BRANSTAD, Governor of the State of Iowa in his Official Capacity, Defendant–Appellee,

James L. Beeghly, Judge; Louis F. Beisser, Judge; Michael S. Walsh, Judge; J.C. Irvin, Judge; Arthur Gamble, Judge; Paul J. Kilburg, Judge; James E. Kelley, Judge; and R. David Fahey, Judge, Intervenors–Appellees.

No. 86–1740.

Supreme Court of Iowa.

March 16, 1988.

Brooker Burnett, Des Moines, for defendant-appellee.

John A. McClintock and David L. Brown of Hanson, McClintock & Riley, Des Moines, for intervenors-appellees.

SNELL, Justice.

On May 5, 1985, the Iowa Legislature passed Senate File 570, entitled

> [a]n Act making corrections and other changes relating to court reorganization, court fees, court-imposed fines and costs and the suspension of motor vehicle licenses and the set-off of income tax refunds and rebates, administrative closures under chapter 601A, the ability to pay a criminal fine, the judicial retirement system, and other court procedures and making certain procedures retroactive.

That portion of the act which deals with the judicial retirement system provides the grist for the present case. This portion of the act, section 27, increased the required contributions by participating state court judges to the judicial retirement fund. *See* Iowa Code § 602.9104 (1985). This increase was to take effect July 1, 1985.

On May 24, 1985, defendant Governor Terry E. Branstad, invoking the authority of Iowa Constitution Article III, section 16, as amended, vetoed section 27. This constitutional provision grants the governor authority to "disapprove any item of an appropriation bill...." This action ensued. While it was pending in the district court, however, the legislature amended section 602.9104. This amendment returned the participating judges' retirement fund contributions to the level in effect prior to the passage of Senate File 570. *See* 1986 Iowa Acts ch. 1243, § 35 (codified at Iowa Code § 602.9104(1) (1987)). This legislation, which was subsequently signed into law by defendant Governor Branstad, became effective July 1, 1986, on a prospective basis only. *See* Iowa Code §§ 3.7, 4.5 (1985). Also in 1986, the legislature provided a statutory definition of an "appropriations

Dan L. Dudley of Murray, Davoren & Dudley, and Ann M. Ver Heul of Mumford, Schrage & Zurek, P.C., Des Moines, for plaintiffs-appellants.

Robert A. Van Vooren, Thomas J. Shields, and Thomas D. Waterman of Lane & Waterman, Davenport, and Barbara

bill." *See* 1986 Iowa Acts ch. 1245, § 2011 (codified at Iowa Code § 3.4 (1987)).

On July 10, 1985, plaintiffs, a group of state legislators, filed a petition for declaratory judgment against defendant Governor Branstad. The petition sought a declaration that Governor Branstad's May 1985 item veto of section 27 exceeded his constitutional authority. On August 30, 1985, eight Iowa district court judges filed their petition of intervention.

Plaintiffs filed an application for adjudication of law points on January 31, 1986, raising the constitutional issue. On June 18, 1986, defendant Governor Branstad filed a motion for summary judgment in which the intervenors subsequently joined. On August 11, 1986, plaintiffs filed their motion for summary judgment along with a resistance to defendant-intervenors' similar motion.

On October 14, 1986, a hearing was held on the motions for summary judgment and on plaintiffs' application for adjudication of law points. In the November 4, 1986, ruling, the district court granted defendant's motion for summary judgment. In granting the motion, the district court concluded the 1986 legislation rendered plaintiffs' declaratory judgment action moot. Although the 1986 legislation was to be applied prospectively only, and consequently would not control during the period between the vetoed legislation's effective date and July 1, 1986, the district court concluded that this issue was not properly raised by the petition. In light of this disposition, the district court found it unnecessary to rule on the remaining motion and application and, accordingly, did not do so. This appeal followed.

I. *Our Scope and Standards of Review.*

■ This action was brought at law. No party requested that the case be transferred to the equity docket. Ordinarily whether a declaratory judgment action is a legal or equitable proceeding is determined by the pleadings, relief sought, and the nature of the case. *Citizens Sav. Bank v. Sac City State Bank,* 315 N.W.2d 20, 24 (Iowa 1982). But, we have consistently held that we will consider and review a case on appeal in the manner it was treated below. *Id.* The present action was treated below as an action at law; accordingly, we treat it as such on this appeal. *See, e.g., Iowa Elec. Light & Power v. General Elec. Co.,* 352 N.W.2d 231, 234 (Iowa 1984). Our characterization of the action as at law is perhaps a matter of only academic concern, however, as even in an equity case we cannot find facts de novo in an appeal from summary judgment. *Lyon v. Willie,* 288 N.W.2d 884, 894 (Iowa 1980).

■ Rather, our review is limited by well-established standards. Iowa Rule of Civil Procedure 237(c) provides that summary judgment

shall be rendered ... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In reviewing the grant of summary judgment under this rule, the question is whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. *Suss v. Schammel,* 375 N.W.2d 252, 254 (Iowa 1985); *Brown v. Monticello State Bank,* 360 N.W.2d 81, 83–84 (Iowa 1984). An issue of fact is "material" only when the dispute is over facts that might affect the outcome of the suit, given the applicable governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211–12. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. *Adam v. Mt. Pleasant Bank & Trust Co.,* 355 N.W.2d 868, 872 (Iowa 1984). We examine the record in a light most favorable to the party opposing the motion for summary

judgment to determine if movant met his or her burden. *Matherly v. Hanson,* 359 N.W.2d 450, 453 (Iowa 1984).

II. *The Summary Judgment Merits.*

█ The district court concluded that the issue raised by the declaratory judgment action was rendered moot by the 1986 legislation. Such a characterization refers to cases which no longer present a justiciable controversy because the issues involved have become academic or nonexistent. *E.g., In re E.C.G.,* 345 N.W.2d 138, 141 (Iowa 1984); *Hamilton v. City of Urbandale,* 291 N.W.2d 15, 17 (Iowa 1980). The test is whether a judgment, if rendered, would have any practical legal effect upon the existing controversy. *E.g., Elview Const. Co. v. North Scott Community School Dist.,* 373 N.W.2d 138, 142 (Iowa 1985); *Toomer v. Iowa Dep't of Job Serv.,* 340 N.W.2d 594, 598 (Iowa 1983).

█ Given this test, we cannot concur with the district court's conclusion. Although we agree the 1986 legislation resolved the issue for the prospective period beginning July 1, 1986, we do not believe this effectively disposed of the entire case. Still at issue is the period beginning July 1, 1985—the date Senate File 570 section 27 would have increased the compensation level absent Governor Branstad's veto—and ending July 1, 1986—the date Senate File 2175 returned the level of compensation to its pre-Senate File 570 level.

Plaintiffs argued this issue in resisting the summary judgment motion. As the district court noted in its order,

[p]laintiffs also resist Defendant's Motion For a Summary Judgment by urging that the instant lawsuit should not be regarded as moot because "whether or not the governor used the item veto properly is necessary to determine whether or not monies for the judicial retirement fund need to be collected for the year of June 30, 1985 to July 1, 1986."

The district court held that this issue did not alter its mootness determination because "[p]laintiffs did not ask for a determination concerning the collectability of contributions to the judicial retirement

fund for the period commencing July 1, 1985." We think that, in reaching this conclusion, the district court applied an unduly restrictive view of the potential effect of the pending declaratory judgment action.

We do not believe the mootness issue is resolved solely by reference to a narrow reading of the particular pleading before the court. Relatedly, we think that in order to avoid a mootness dismissal, a petition need not catalog every consequence that may conceivably follow from a particular judgment. The issue is not whether the petition is sufficient to raise a particular issue—here "collectability"—for judicial resolution. Rather, the issue is whether resolution of the issues actually presented would have any practical legal consequence upon the existing controversy. *E.g., Elview Constr.,* 373 N.W.2d at 142.

In *In re E.C.G.,* 345 N.W.2d 138 (Iowa 1984), for example, we dealt with a father's motion to vacate an order terminating his parental rights. The district court had concluded the motion was mooted by the child's death one day after the order's entry. In reversing the district court's mootness determination, we noted that a ruling on the motion to vacate would affect the parent's potential recovery if a wrongful death suit was brought. In addition, we noted the ruling would have consequences for the parent's desire to have "a voice in the appointment of a personal representative of the child ... and also a voice in determining where the child should be buried." 345 N.W.2d at 141. Accordingly, we concluded it "apparent ... that the issues involved are not merely academic." *Id.*

Similarly here, the petition, by seeking a determination of the legality of the item veto's exercise, perforce sought an opinion on whether section 27 became the law. If it did, collectability of payments from the judges, absent some intervening prohibition, would follow. This consequence illustrates one potential "practical legal effect" the declaratory judgment could have on the existing controversy, i.e., that the judgment would have ramifications on the col-

lection issue. Although plaintiffs' petition failed to request resolution of all potential issues involved in the controversy, we do not think such a failure renders the issues actually submitted moot.

We think this reasoning particularly persuasive in the context of the present declaratory judgment action. Our rules governing declaratory judgment do not allow the court to refuse relief simply because such relief would not terminate the entire controversy. *Wright v. Thompson*, 254 Iowa 342, 353, 117 N.W.2d 520, 526 (Iowa 1962). Similarly here, we do not believe the issues inhering in the declaratory judgment petition were mooted simply by the fact there may be further litigation between the parties concerning, for example, the collectability issue. Certainly, the declaratory judgment petition raises for determination the issues of uncertainty and controversy which give rise to the proceeding.

Moreover, our law makes such judgments res judicata as to all issues actually determined between the parties. *Lynch v. Lynch*, 250 Iowa 407, 414–15, 94 N.W.2d 105, 110 (1959). A declaration that defendant Governor Branstad had exceeded his constitutional authority and that, as a result, the increased contribution was the law of this state, may be binding in an action instituted for the incremental contribution's collection, at least as against the intervenor judges. *See Hunter v. City of Des Moines*, 300 N.W.2d 121, 126 (Iowa 1981). Consequently, such a judgment would have a "practical legal effect upon the existing controversy." *E.g., Toomer*, 340 N.W.2d at 598. We take no position on the resolution of the merits of the declaratory judgment action; we simply note the issues involved are not merely academic.

### III. *The Relevance of the Legislative Definition of an "Appropriation Bill."*

The district court also concluded that the present case was not an appropriate opportunity for application of the "public interest" exception to the mootness doctrine. This exception comes into play only in situations in which a case would other-

wise be properly dismissed as moot. *See, e.g., Department of Gen. Servs. v. R.B. Boggs Co.*, 336 N.W.2d 408, 410 (Iowa 1983). We think the issues involved here should be addressed because they are not moot and, accordingly, the exception does not apply. However, we think the district court's rationale for rejecting the exception manifests an error which may recur in the court's disposition of the merits upon remand. Accordingly, for guidance upon remand, we address it.

The general criteria for determining the propriety of the exception's application is whether the mooted issue is of great public importance and is likely to recur. *E.g., Rush v. Ray*, 332 N.W.2d 325, 326 (Iowa 1983). In rejecting the exception, the district court first noted that resolution of the declaratory judgment action would hinge upon the definition given to the term "appropriation bill" as used in the constitutional grant of gubernatorial item veto authority. The briefs and record in this case support the district court's premise that, in fact, this is the legal crux of this action. In holding that this issue was unlikely to recur, however, the district court relied on 1986 legislation which provided a definition of the term "appropriation bill." *See* 1986 Iowa Acts ch. 1245, § 2011 (codified at Iowa Code § 3.4 (1987)). We cannot agree the legislative enactment settles the point.

The declaratory judgment action involves a determination of the scope of the governor's constitutional authority. This issue is not within the province of the legislature to decide. In addressing a similar issue on the federal level the United States Supreme Court stated the following:

> In the performance of assigned constitutional duties each branch of the Government must initially interpret the Constitution, and the interpretation of its powers by any branch is due great respect from the others.... Many decisions of this Court, however, have unequivocally reaffirmed the holding of *Marbury v. Madison* that "[i]t is emphatically the province and duty of the judicial department to say what the law is."

. . . .

Our system of government "requires that federal courts on occasion interpret the Constitution in a manner at variance with the construction given the document by another branch." And in *Baker v. Carr*, the Court stated:

"Deciding whether a matter has in any measure been committed by the Constitution to another branch of government, or whether the action of that branch exceeds whatever authority has been committed, is itself a delicate exercise in constitutional interpretation, and is a responsibility of this Court as ultimate interpreter of the Constitution."

Notwithstanding the deference each branch must accord the others, the "judicial Power of the United States" vested in the federal courts by Art. III, § 1, of the Constitution can no more be shared with the Executive Branch than the Chief Executive, for example, can share with the Judiciary the veto power, or the Congress share with the Judiciary the power to override a Presidential veto. Any other conclusion would be contrary to the basic concept of separation of powers and the checks and balances that flow from the scheme of a tripartite government.

We therefore reaffirm that it is the province and duty of this Court "to say what the law is" with respect to the claim of privilege presented in this case.

*United States v. Nixon*, 418 U.S. 683, 703–05, 94 S.Ct. 3090, 3105–06, 41 L.Ed.2d 1039, 1061–62 (1974) (citations omitted).

We hold similar reasoning controls in this state. Whatever purposes the legislative definition of "appropriation bill" may serve, it does not settle the constitutional question. In this case, determination of the scope of the governor's authority granted by Article III, section 16, as amended, will require a decision whether the bill involved here was an "appropriation bill" as that term is used in our constitution. This determination, notwithstanding the legislative definition, is for the courts.

## IV. *Disposition.*

Having reached a conclusion on the mootness issue different from that reached by the district court, we are presented with arguments from the parties concerning the merits of the declaratory judgment petition and the motion for adjudication of law points. We note, however, that the district court expressly declined to rule on either plaintiffs' petition or motion in light of its summary judgment resolution of the mootness issue. Consequently, we believe the merits of the constitutional issue are not properly before us.

■ We have noted above that the case at bar is one at law. Our review of such cases is limited to the correction of legal errors. Iowa R.App.P. 4. In addition, the present appeal is taken only from the district court's disposition of defendants' summary judgment motion, which motion raised only the mootness issue. Our review of summary judgment dispositions where, as here, no question of material fact exists, is only to determine whether the law was correctly applied to those facts. *See, e.g., Adam v. Mt. Pleasant Bank & Trust Co.*, 355 N.W.2d 868, 872 (Iowa 1984).

We dealt with this situation in *Rush v. Ray*, 332 N.W.2d 325 (Iowa 1983), another challenge to the governor's constitutional item veto power. In *Rush* the district court dismissed the case as moot and declined to rule on the applicability of the "public interest" exception. In reversing and remanding for an application of the exception, we stopped short of reaching the merits, noting only that "[b]ecause the trial court did not consider the question on the merits there is nothing further for our review." 322 N.W.2d at 328.

In *Mills County State Bank v. Roure*, 291 N.W.2d 1 (Iowa 1980), we declined to resolve on appeal an issue upon which the trial court had not ruled but had, rather, held moot in view of its grant of summary judgment to the opposing party. We noted simply that "[t]his matter is not moot under our disposition of the appeal, and if presented should be addressed by the trial court upon remand." 291 N.W.2d at 5.

In *Iowa–Illinois Gas & Electric v. Iowa State Commerce Commission,* 347 N.W.2d 423, 427 (Iowa 1984), we were faced with a request to address the merits of an action which had been dismissed by the district court for want of standing. Although reversing the district court's resolution of the standing issue and its resulting dismissal of the petition, we refused to rule on the petition's merits. Citing *Rush,* we stated as follows:

> The commission urges us to decide the merits of Planners' contentions presented to but not ruled on by the district court. If we were to do so, we would not be performing our review function; we would be deciding issues that were not decided by the district court. This would be contrary to our function as a court of review. The only question presented for our review on Planners' appeal is the district court decision dismissing the petition for want of standing. Having determined that the district court erred in dismissing the petition, we reverse and remand on Planners' appeal to permit the district court to decide the case on the merits.

(Citations omitted.) *Id. See also Iowa Gateway, Inc. v. Interstate Power Co.,* 350 N.W.2d 141, 148 (Iowa 1984).

Similar reasoning applies here. The district court made no ruling on the merits of the declaratory judgment petition or application for adjudication of law points. We consequently have nothing to review. The summary judgment is reversed and this case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

All Justices concur except LAVORATO, J., who takes no part.