Lowell JUNKINS, State Senator; Don Avenson, State Representative; C.W. (Bill) Hutchins and Joe Welsh, State Senators; Robert C. Arnould, John H. Connors and Richard W. Welden, State Representatives; individually and in their representative capacity as members of the 71st General Assembly of Iowa, Appellants,

v.

Terry E. BRANSTAD, Governor of the State of Iowa in his Official Capacity, Appellee.

No. 88–1791.

Supreme Court of Iowa.

Nov. 22, 1989.

Ann M. Ver Heul of Shearer, Hintze & Templer, P.C., West Des Moines, and Dan L. Dudley, Des Moines, for appellants.

Robert A. Van Vooren and Maria Mihalakis Waterman of Lane & Waterman, Davenport, and Barbara Brooker Burnett, Des Moines, for appellee.

SCHULTZ, Justice.

In this appeal plaintiffs, state legislators, seek to have the Governor's veto of section 27 of Senate File 570 declared unconstitutional.

In May 1985 the 71st General Assembly passed Senate File 570 entitled:

AN ACT making corrections and other changes relating to court reorganization, court fees, court-imposed fines and costs and the suspension of motor vehicle licenses and the setoff of income tax refunds and rebates, administrative closures under chapter 601A, the ability to pay a criminal fine, the judicial retirement system, and other court procedures and making certain procedures retroactive.

1985 Iowa Acts ch. 197. Defendant, Governor Terry E. Branstad, invoking the authority of article III, section 16 of the Iowa Constitution, vetoed section 27 of Senate File 570. This section increased the amount that Iowa judges must contribute to the judicial retirement fund as mandated by Iowa Code section 602.9104(1) (1985).

Plaintiffs filed a petition seeking a declaratory judgment against Governor Branstad. They claim that his item veto of section 27 exceeded the authority granted him by article III section 16 of the Iowa Constitution. Plaintiffs assert that while this provision allows the governor to "disapprove any item of an appropriation bill," Senate File 570 is not an appropriation bill.

While this case was still pending in the district court, the 71st General Assembly

enacted legislation which returned the judge's retirement fund contributions to the level in effect prior to the passage of Senate File 570. This legislation was signed into law by Governor Branstad and became effective July 1, 1986 on a prospective basis only. *See* 1986 Iowa Acts ch. 1243, § 35 (codified at Iowa Code § 602.9104(1) (1987)). In addition, the General Assembly passed Senate File 2175, which defined an appropriation bill as "a bill which has as its primary purpose the making of appropriations of money from the public treasury." 1986 Iowa Acts ch. 1245, § 2011 (codified at Iowa Code § 3.4 (1987)).

Because of this new legislation, the district court granted the Governor's motion for summary judgment, concluding that the case was moot. Plaintiffs appealed that judgment. This court, in *Junkins v. Branstad*, 421 N.W.2d 130 (Iowa 1988) (*Junkins I*), reversed the summary judgment for defendant and remanded the case to the district court for further proceedings. We held that the 1986 legislation did not resolve the issue for the period beginning July 1, 1985 and ending July 1, 1986. *Id.* at 133. In addition, we stated that the determination of what is an appropriation bill under the Iowa Constitution, notwithstanding the legislative definition, is a matter for the courts. *Id.* at 135.

On remand, the district court overruled plaintiffs' application for separate adjudication of law points and motion for summary judgment. The case was tried to the court in 1988. The trial court held that a bill which contains a single appropriation is an appropriation bill for purposes of the governor's item veto power and that sections 25, 27, 37, and 47 of Senate File 570 each contain an appropriation. The court therefore concluded that Senate File 570 was an appropriation bill subject to the governor's item veto power under article III section 16 of the Iowa Constitution. Plaintiffs appeal this ruling. We affirm.

On appeal plaintiffs present three issues for consideration. They claim that the trial court erred when it (1) overruled their application for adjudication of law points and

motion for summary judgment, (2) concluded that Senate File 570 contains an appropriation and (3) concluded that Senate File 570 was an appropriation bill within the meaning of article III, section 16 of the Iowa Constitution.

■ I. *Application for Adjudication of Law Points and Motion for Summary Judgment.* An application for adjudication of law points and a motion for summary judgment are appropriate only when the issue in question should be decided by the court as a matter of law rather than presented to the factfinder. *Kriv v. Northwestern Sec. Co.*, 237 Iowa 1189, 1195, 24 N.W.2d 751, 754 (1946). At issue in this case is whether Senate File 570 should be considered an appropriation bill so to make it subject to the governor's item veto power.

■ The trial court accepted the defendant's position that further discovery was needed and that there were genuine fact issues to be decided. While we have said that courts should permit discovery to learn the facts to better apply the appropriate substantive rule of law, *Carter v. Jernigan*, 227 N.W.2d 131, 136 (Iowa 1975), the only questions remaining here are questions of law. In *Junkins I* we stated that this declaratory judgment action involves a determination of the scope of the governor's constitutional authority. 421 N.W.2d at 134. We said that the determination of what was an appropriation bill was a question for the courts. *Id.* at 135. Therefore, whether Senate File 570 is an appropriation bill is an issue of constitutional analysis which presents a question of law for the courts. The court must rule on the legal points raised in a pleading. Iowa R.Civ.P. 105; *Iowa Bankers v. Iowa Credit Union Dep't*, 335 N.W.2d 439, 448 (Iowa 1983). The trial court, therefore, erred in overruling plaintiffs' motion for summary judgment and application for adjudication of law points.

Our review of the record solidifies our conclusion that the additional evidence received was unnecessary to the court's result. The evidence generally addressed legal issues and undoubtedly was of some

aid to the court. The court referred to some of the witnesses' testimony but arrived at its own conclusions of law. In view of the court's ultimate, well-reasoned rulings on those legal issues, the error in overruling plaintiffs' motions is harmless.

II. *Definition of an Appropriation Bill.* Our state constitution allows a governor to veto an entire bill or to veto items of an appropriation bill. Iowa Const. art. III, § 16. As to an item veto, section 16 states in part:

> The governor may approve appropriation bills in whole or in part, and may disapprove any item of an appropriation bill; and the part approved shall become a law. . . .

However, the term "appropriation bill" is not defined.

The parties do not agree on the meaning of the term "appropriation bill." The Governor takes the position that a legislative bill that contains a single allocation of revenue to a specific fund is an appropriation bill. The plaintiffs claim, however, that an appropriation bill must deal with more than the collection and deposit of funds; they urge that the bill must authorize the expenditure of money out of those funds. They also challenge the single allocation theory, maintaining that an isolated appropriation in a bill does not turn it into an appropriation bill. They urge that the bill's primary and specific purpose must be to appropriate money in order for that bill to be considered an appropriation bill.

A. *Constitutional Construction.* The undefined language "appropriation bill" is ambiguous and requires interpretation by the court. Constitutional provisions are generally subject to the same rules of construction as statutes. *Iowa Fed'n of Labor v. Dep't of Job Serv.*, 427 N.W.2d 443, 445 (Iowa 1988). In construing a constitution, the purpose of the court is to ascertain the intent of the framers. *Redmond v. Ray*, 268 N.W.2d 849, 853 (Iowa 1978). "We must first look at the words employed, giving them meaning in their natural sense and as commonly understood." *Id.*

■ B. *What is an appropriation?* The trial court correctly recognized that the various jurisdictions which have addressed these issues have not reached a consensus as to what constitutes an appropriation for constitutional purposes. The court cited with approval a Nevada court's definition of an appropriation as "the setting apart a portion of the public funds for a public purpose." *State ex rel. Pyne v. La Grave*, 23 Nev. 25, 26, 41 P. 1075, 1076 (1895). Plaintiffs urge, however, that there must be specific authority to spend within the four corners of the legislation. They cite *State ex rel. Parker v. Youngquist*, 69 S.D. 423, 426, 11 N.W.2d 84, 86 (1943), for the proposition that "[t]he test of whether an act [contains] an appropriation is whether the money may be paid or drawn from the state treasury on authority of the act."

The dictionary defines "appropriation" as "money set aside by formal action for a specific use." Webster's Ninth New Collegiate Dictionary (1988). This provides a simple definition, which can be understood by the voters that passed this constitutional provision. This definition is in accord with the conclusion of the House of Representatives Committee on Rules that:

> [T]here is general agreement [among the states] that an appropriation is a setting aside from public revenue of an identifiable sum of money for a specific object in such a manner that public officers are authorized to use that money, and no more, for that object. . . .

Staff of House of Representatives Comm. on Rules, 99th Cong., 2d Sess., *Item Veto: State Experience and Its Application to the Federal Situation*, at 142 (Comm. Print 1986).

We believe that the allocation of funds, whether from the general fund or from a revenue-producing bill, into a separate and distinct fund that the State can no longer utilize for other purposes absent subsequent legislation, is an appropriation as intended by article III, section 16. This definition would allow the triggering of the governor's veto power when money is set

aside for a specific purpose. This view is consistent with the purpose of the item veto provision of our constitution, which gives the governor a larger role in the state budgetary process. *Colton v. Branstad*, 372 N.W.2d 184, 192 (Iowa 1985).

C. *Sections 25, 27, 37 and 47.* The trial court concluded that sections 25, 27, 37 and 47 each contained an appropriation. Three of those sections provide for the distribution of revenue, and one authorizes the payment of an expense. Section 25 allocates a portion of the fees and costs for the filing of a criminal complaint to the general fund of the state, the court revenue distribution account and the judicial retirement fund. Section 27 increases the percentages of judges' salaries that are to be paid into the judicial retirement fund. Section 37 allocates a portion of the docket fees that are to be paid into the judicial retirement fund. Section 47 requires the court administrator to cause an actuarial valuation to be made of the judicial retirement fund and provides that the cost be paid from such fund.

■ We conclude that sections 25, 27 and 37 are clearly appropriations. These sections provide that state revenues shall be set aside into a separate fund for a specific use. While each section is, in part, a revenue-raising measure, the allocation of that revenue into the judicial retirement fund, which provides annuity benefits for judges, is a transfer of revenue into a fund that cannot be utilized by the State for other purposes. *See* Iowa Code §§ 602.-9104(2) (1985) (judges' contributions deposited with state treasurer credited to judicial retirement fund) and 602.9111(1985) (state treasurer to invest judicial retirement fund as prescribed with earnings credited to fund). These revenues from sections 25, 27 and 37 are placed into the retirement fund to supplement other appropriations and the judges' contributions to the fund. These funds are separate from the state's general fund and are committed to provide retirement benefits.

■ We also conclude that section 47 is an appropriation. It requires the court administrator to pay for the cost of the increased number of actuarial valuations out of the fund. The fund, although held for a special purpose, is administered by a state officer and is a state fund. The authorization of this payment would be an appropriation.

■ D. *Single Appropriation versus Primary Purpose Tests.* Our determination that four sections of the forty-nine sections of Senate File 570 contain appropriations does not answer the question whether this legislation is an "appropriation bill." Plaintiffs argue that an isolated appropriation in a bill does not turn a bill of otherwise general legislation into an appropriation bill. They maintain that the test of whether a bill is an "appropriation bill" is if the primary and specific aim of the legislature was to make appropriations of money from the public treasury. They maintain that the primary and specific purpose of Senate File 570 is to clean up prior court system legislation. The Governor takes the opposite view and claims the proper test is whether the bill contains a single appropriation. The trial court adopted the "single appropriation" test, concluding that any bill that contains an appropriation is an appropriation bill.

We agree with the trial court's rejection of the "primary and specific purpose test." It would be quite easy for the legislature to deprive a governor of the constitutional powers conferred on the chief executive officer by including specific items of appropriations in general bills. To adopt the primary purpose test would be to require the governor, in such an instance, to choose between approving acceptable substantive legislation or disapproving the entire bill in order to prevent items of expenditure which the governor feels are not in the best interest of the public from becoming law. *See Colton*, 372 N.W.2d at 190–91.

Neither do we believe that the presence of a single appropriation within a bill automatically causes it to become an "appropriation bill" for the purpose of an item veto. We believe the proper test is to review each bill on an ad hoc basis and determine whether the bill contains an appropriation which could significantly affect the gover-

nor's budgeting responsibility. If the test is met, the governor can properly exercise the item veto as to the appropriation of money. This test takes into consideration the constitutional responsibility of both branches of government.

■ Turning to this case, application of our test clearly demonstrates that Senate File 570 is an "appropriation bill" within the meaning of article III, section 16. Three sections of Senate File 570 require the allocation of substantial state revenues into the judicial retirement fund. The obvious legislative purpose for the allocation of these funds was to improve the solvency of this fund and to prevent a future bail-out from the state's general fund of an underfunded retirement plan. The choice of pay-as-you-go funding of a retirement fund or financing presently incurred liabilities by future taxation fits squarely within the purposes of the item veto power. It accommodates the constitutional scheme of balancing the legislature's authority to make appropriations by allowing the governor veto power in order to meet that office's budgetary duties. The three sections apportioning funds to the retirement fund clearly make this bill an "appropriation bill." Whether the direction to pay the insignificant cost of an audit or study, by itself, is sufficient to trigger the veto powers of the governor over an otherwise general bill is a matter we need not answer today.

In summary, we conclude that Senate File 570 is an appropriation bill subject to the Governor's item veto under article III, section 16 of the Iowa Constitution. We affirm the trial court.

AFFIRMED.

CARTER, Justice (concurring specially).

This is an important case which will weigh heavily on how the executive and legislative branches will hereafter conduct themselves in the business of government. The uncertainties which this case presents is the product of an unwarranted interpretation of the item veto amendment espoused by this court eighteen years ago in *State ex rel. Turner v. Iowa State High-*

*way Comm'n,* 186 N.W.2d 141, 142 (Iowa 1971).

The opinion in *State ex rel. Turner* concluded that the item veto authority may be extended to nonappropriation items if the entire bill may somehow be characterized as an appropriations bill. That interpretation has led to two highly undesirable results. First, it serves to extend the scope of the item veto amendment to items which are not appropriations and, consequently, were not intended to be subject to item veto by the framers of the constitutional amendment. Second, as the present controversy shows, the interpretation in *State ex rel. Turner* does not turn the validity of an item veto on the nature of the vetoed item (which is what the controversy is about), but, rather, on some inexact and arbitrary characterization of the bill in which the vetoed item is contained.

After discussing much authority which was contrary to the position which it ultimately adopted, the court in *State ex rel. Turner* cited only a discussion from Note, 18 Drake Law Review 245, 250 (1969) in support of its interpretation. The discussion which was quoted in the opinion was as follows:

> It would seem probable that should the Iowa Legislature attempt to coerce the Governor into approving a lump sum appropriation by combining purpose and amount, the court would interpret the term "item" liberally to preserve the purpose of the item veto amendment.

If the quoted statement is read within the context of the entire discussion, it does not support the court's interpretation of the constitutional amendment.

The point which was being made in the law review note was that the combining of an appropriation with a nonfiscal measure would not save the appropriation item from veto. The writer was *not* suggesting that placing an appropriation item in a bill rendered every item in that bill subject to item veto. Nor was the writer suggesting that the validity of an item veto turned on the characterization of the bill as a whole. Indeed the law review note firmly makes the point that under the weight of authority

from other jurisdictions the term "item" is to be interpreted as limiting the governor to vetoing only those items which specifically appropriate money and not some general provision of law incorporated in a bill which contains some appropriation items.

Although I applaud the majority opinion for its rejection of the governor's argument that a single appropriation item in a bill makes all items in that bill subject to item veto, the test which the majority adopts for purposes of the "characterization of the bill" criterion provides no meaningful guidance for future cases. Reasonable minds will often differ as to whether an entire bill composed of a mixture of fiscal and nonfiscal legislation may be characterized as being predominantly an appropriations bill. Moreover, there is no valid reason to make the character of the bill as a whole the determinative factor in deciding controversies of this type. In order to provide a more meaningful criterion for measuring the scope of the governor's authority, we should abandon the "characterization of the bill" test in favor of a test which focuses on whether the item which is vetoed is itself an appropriation.

Although it is not essential to the rationale under which it decides the case, the majority concludes that the item which was vetoed was an appropriation. Because I find sufficient support for that conclusion, I agree that this case is being correctly decided, although disagreeing with the test which the majority has applied.

NEUMAN, J., joins this specially concurring opinion.