# IN THE COURT OF APPEALS OF IOWA

No. 17-1568
Filed September 12, 2018

IN RE THE MARRIAGE OF EDDIE R. MACK
AND KATHY A. MACK

Upon the Petition of
**EDDIE R. MACK,**
      Petitioner-Appellant,

**And Concerning**
**KATHY A. MACK,**
      Respondent-Appellee.

_____

Appeal from the Iowa District Court for Audubon County, James S. Heckerman, Judge.

An ex-husband appeals a dissolution decree, arguing the district court should have (1) imposed discovery sanctions; (2) accounted for dissipation in the property division; (3) ordered trial attorney fees; and (4) denied the wife's request for a noncompetition clause. **AFFIRMED AS MODIFIED.**

Gina C. Badding of Neu, Minnich, Comito, Halbur, Neu & Badding, P.C., Carroll, for appellant.

J. C. Salvo and Bryan D. Swain of Salvo, Deren, Schenck, Gross, Swain & Argotsinger, PC, Harlan, for appellee.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

Although Eddie and Kathy Mack could not reconcile their differences to preserve their marriage, during more than twenty years together the couple did build a successful small business—Midwest Hard Parts, Inc. (MHPI). That lucrative aluminum-scrapping venture lies at the heart of this divorce appeal. Eddie raises four claims: (1) the district court should have imposed discovery sanctions when Kathy failed to turn over business records; (2) the property division was inequitable and should have accounted for Kathy's dissipation of corporate assets; (3) the court should have ordered Kathy to pay trial attorney fees; and (4) the decree improperly included a noncompetition clause, limiting Eddie's future business prospects. After reviewing the record, we find Eddie failed to preserve error on the first issue. On the remaining claims, we find the decree to be equitable—with two small exceptions. Due to a mathematical error, we modify Kathy's equalization payment slightly in Eddie's favor. We also order Kathy to pay $7000 toward Eddie's trial attorney fees.

## I.     Facts and Prior Proceedings

Eddie and Kathy first married in 1984. They stayed together for twelve years, divorced for two months, remarried, and continued as husband and wife for nine more years before Eddie filed for divorce. This is an appeal from their second divorce.

Nearly twenty years ago, Kathy and Eddie started MHPI in their garage. Eddie scrapped transmissions for the aluminum and discovered a demand for the parts they kept stocked on their shelves. The Macks incorporated their business in 2000. Kathy handled ordering, bookkeeping, and payroll duties while Eddie

handled parts and labor. They also raised three children—all of whom were adults by the time of this divorce. Throughout their relationship, the Macks used the business to pay personal expenses and allowed an accountant to separate the two categories for tax purposes.

Eddie and Kathy separated in December 2015. Eddie filed a petition for dissolution in March 2016. Trial was originally set for September 2016 but did not occur until July 2017. In the interim, the parties reconciled and split up several more times. Simultaneously, they peppered each other with discovery requests and pretrial motions—mostly by Eddie against Kathy. Between the petition and the decree, Eddie filed an application for a restraining order; many discovery requests; seven motions to compel; applications to inspect the MHPI business premises; five motions for sanctions; motions to produce MHPI's business keys and computer passwords; and motions to appoint an auditor. The couple's representations to the court that they had reconciled, brief cessations of hostilities and subsequent separations, and simultaneous adversarial filings created significant confusion and delay.

In April 2016, Eddie sought a restraining order to prevent Kathy from (1) dissipating corporate assets and (2) restricting him from conducting business activities; Kathy sought the same injunctions against Eddie. In May, the district court allowed Kathy to keep running MHPI and excluded Eddie from both the business premises and its assets. It ordered Kathy to direct the company's accountant to prepare monthly profit and loss statements and to provide them to Eddie. And the court allowed Eddie to retrieve several recreational vehicles that were located on the premises.

In August 2016, Eddie filed a motion to compel discovery of the parties' 2015 tax return, credit card statements, bank account statements, and answers to his earlier interrogatories. The court sustained the motion to compel and ordered Kathy to produce the documents by August 19. On August 22, Eddie filed a second motion to compel alleging Kathy failed to provide complete financial disclosures and that—despite the May order—Kathy had not provided monthly profit and loss statements. For the first time, Eddie asked for unspecified sanctions against Kathy. It appears the court never addressed his motion.

In early fall, the parties jointly requested a continuance, eyeing potential reconciliation. But in November 2016, Eddie filed a third motion to compel: he had requested and not received backup copies of MHPI's QuickBooks records. He also accused Kathy of dissipating corporate assets to pay attorney fees and other personal expenses. The court held an unrecorded hearing in December and issued an order in January 2017. The court ordered the parties to draw only $1000 each per week from the company as salary and $1000 each per month for attorney fees. No further use of business funds for personal expenses was allowed. The court ordered Kathy to give backup copies of the company's QuickBooks records and other financial documentation to her own accountants, Kevin Garrett and Ron Nielsen, and Eddie's accountant, John Sklenar, by February 1. The order instructed the accountants to receive monthly copies of the QuickBooks records and provide oversight to prevent personal use of corporate funds. The court did not impose any sanctions.

In March 2017, Eddie filed another motion to compel, asserting he had not received the QuickBooks records; nor had he received requested credit card

statements or check copies. Kathy responded she was producing all the documents she had. She also asserted she gave the QuickBooks records to her accountant Garrett, and could not control whether he provided them to Eddie's accountant.[1] She asserted and maintained throughout the proceedings that Eddie's discovery requests were duplicative and meant to harass her rather than obtain relevant information. The court set a hearing on the motion for May 8, but it is not clear from our record what orders followed from that hearing.

In early June 2017, Eddie filed another motion to compel, asserting the QuickBooks records he received were "raw data" instead of the "backup" version requested and from which reports can be generated.[2] Other financial documents were still missing. He requested again, generally, that Kathy be sanctioned. He specifically requested attorney fees. After a hearing on June 12, the court sustained the motion to compel and ordered production of seven credit card statements, as well as Kathy's personal bank statements. The order did not mention the QuickBooks records or the requested sanctions.

---

[1] An email to Kathy's counsel dated December 2016 indicates Garrett refused to work on the Mack case until he was paid for past work. It is not clear if this hurdle was resolved.

[2] At trial, Eddie's accountant, John Sklenar, testified he received a corrupted copy of the QuickBooks data. Kathy called a forensic accountant, Ronald Nielsen. Like Sklenar, Nielsen was unable to analyze the QuickBooks data. Both accountants also complained about the lack of information provided by Kathy and her personal accountant Garrett.

Kathy did not provide monthly profit and loss statements as ordered in May 2016. But the court limited the relevant timeframe to post-January 2017. Kathy insisted she gave Eddie full discovery of all financial documents within her control and pointed out many of his requests were for accounts and credit cards they held jointly, which Eddie could have obtained himself. It appears the court put some stock in her representations, as it only sustained Eddie's motions to compel twice in the relevant timeframe. Despite complaining about receiving only "raw data" from QuickBooks, Eddie shared the information with accountant his Sklenar. If Sklenar did not have time to do the analysis, Eddie could have requested a continuance, but he did not.

Also at the June 12 hearing, the court ventured to value MHPI and decide which party would purchase it. Eddie agreed to pay $467,840 for the business. Three days later, Eddie filed a motion to compel Kathy to give him keys to the business and passwords to the office computers. Eddie also filed a motion for sanctions, alleging Kathy continued to violate discovery orders. Kathy responded Eddie's purchase was conditioned upon obtaining a $200,000 line of credit, and he was not able to complete that condition, so he was not entitled to take possession of the company.[3] At the end of June, Eddie filed two more motions to compel and motions to impose sanctions; he called for the first time to exclude any evidence Kathy might produce as a sanction for the discovery violations and again requested $1000 in attorney fees. The court held an unrecorded hearing on June 29. On July 3, it issued an order finding Eddie had failed to secure the necessary credit, so he could not purchase the business. The court stated Kathy would continue to have exclusive control of the business until further order. The court did not respond to any discovery or sanctions requests.

Meanwhile, Eddie filed a new request for supplementary discovery followed by another motion to exclude evidence based on Kathy's failure to produce "usable" QuickBooks backups.

At the pretrial conference on July 17, 2017, the court agreed Eddie had not met the condition to purchase MHPI. The court reached a new valuation of the business based on Eddie's suggestion the real estate be sold through an agent and the equipment and inventory be sold at auction—Eddie estimated together the

---

[3] It is not clear from the June 12 hearing or subsequent order that Eddie's purchase was conditioned upon obtaining that line of credit.

sales would total about $325,000. The court offered to award MHPI to Kathy, placing that amount on her side of the ledger, and she accepted. The amount included all assets and liabilities of the business. The court did not rule on Eddie's other motions.

The dissolution trial occurred July 28, 2017. Ruling from the bench, the court found the Macks' separation began January 1, 2017, because before that date the parties were trying to reconcile, largely living as husband and wife, and sharing finances. The court collected estimates from the parties as to how much more Kathy spent on personal expenses and attorney fees than Eddie did—from the first of the year. Eddie estimated $90,000; Kathy was at $70,000. The court split the difference and found Kathy spent $80,000 more from business proceeds. The court added half that amount to an equalization payment outlined in the dissolution decree.

The court issued the decree on August 24, 2017. The court awarded Kathy MHPI with all its assets and liabilities, the marital home, a duplex, a contract for repayment of a home loan to the parties' daughter, and six cars. The court awarded Eddie the contracts on three different house loans to the parties' son and two others, seven cars and recreation vehicles, and all guns and tools in his possession. The parties kept all monies in their personal accounts, most of which were reduced to negligible balances. After comparing the awards, the court ordered Kathy to make a $261,328 equalization payment to Eddie. It also imposed a noncompetition requirement on Eddie, preventing him from starting or operating a similar scrapping business for four years within a radius of 250 miles from the parties' hometown of Hamlin. The parties were responsible for their own attorney

fees and split court costs. Eddie filed a lengthy motion to amend, enlarge, and reconsider, which the court denied on all grounds. Eddie appeals.

## II. Scope and Standard of Review

We review an equity action involving the dissolution of a marriage de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). "[W]e examine the entire record and adjudicate anew the issue of the property distribution." *Id.* While we give weight to the district court fact findings, particularly concerning witness credibility, we are not bound by them. *Id.* We modify the decree only when it falls short of equity. *Id.*

The district court has discretion to sanction a party for failing to comply with discovery orders. *Whitley v. C.R. Pharmacy Serv., Inc.*, 816 N.W.2d 378, 388 (Iowa 2012). We will find an abuse of discretion if the court acted "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.* at 389. Likewise, to overturn the court's decision on attorney fees, the complaining party must show an abuse of discretion. *In re Marriage of Roerig*, 503 N.W.2d 620, 622 (Iowa Ct. App. 1993).

## III. Discussion

### A. Sanctions

Eddie contends the district court abused its discretion by not imposing sanctions against Kathy, including exclusion of her evidence at trial.[4] Eddie provides a laundry list of documents Kathy was ordered to, but never produced, including profit and loss statements, records from various personal and business

---

[4] At a minimum, Eddie says, the district court should have awarded him trial attorney fees. We will address this claim separately.

accounts, credit card statements, and the QuickBooks backup records from MHPI. Eddie asserts without the QuickBooks records, his expert witnesses could not pinpoint where Kathy dissipated marital assets.

Kathy contends Eddie did not preserve the sanctions issue for appeal. Eddie first asked the court to sanction Kathy by excluding evidence regarding the business and personal accounts in his June 23 motion. He renewed that request June 27, July 14, and September 1 in his motion to reconsider. But he did not object to Kathy's testimony or to the offer of exhibits at trial. In addition, although he filed five different motions for sanctions, not all of which named a particular penalty, we cannot tell from the record that the court explicitly ruled on any of them. Neither party points to a ruling or on-the-record discussion by the court considering whether to impose a sanction. If such a ruling was made during an unrecorded hearing, it is not in our record.

Without any on-the-record rationale, we cannot review for an abuse of discretion. We will not find a district court mishandled an issue "unless the issue was presented for ruling." *Linge v. Ralston Purina Co.*, 293 N.W.2d 191, 195 (Iowa 1980). "[T]he failure to obtain a ruling is inexcusable unless the court refuses or fails to rule after a ruling is requested." *Id.* (citing *Fjelland v. Wemhoff*, 249 N.W.2d 634, 638 (Iowa 1977)). Eddie cannot raise the sanction issue now because the court never ruled on his requests. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). Eddie argues in reply briefing that he sought sanctions in five motions, as well as the motion to reconsider, so the court was well aware of the

claim. Yet Eddie does not cite a point in the record where he specifically demanded the court rule on the sanctions issue or where the court even considered sanctions.[5] We find nothing in the record to review.

## B.    Property Division.

Eddie next complains the division of marital property was inequitable. He contends the district court did not adequately account for Kathy's dissipation of marital assets. He also contends the court incorrectly valued several marital assets including MHPI, a duplex, and a 2008 Chevrolet Tahoe. He also complains two housing contracts should have been awarded to Kathy or sold. He believes the cash equalization award failed to account for the value of certain property awarded to Kathy and contained a mathematical error. Finally, he complains the court failed to impose interest or an acceleration clause on the cash equalization payment.

"[M]arital property is to be divided equitably, considering the factors outlined in Iowa Code section 598.21(1)." *In re Marriage of Hansen*, 733 N.W.2d 683, 702 (Iowa 2007). "Equitable distribution depends upon the circumstances of each case." *Id.* (citing *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005)).

---

[5] Eddie pointed out in his motion to amend that despite numerous motions to compel and motions for sanctions, the court repeatedly took no action. In its ruling on the motion to amend, the court stated all issues were previously raised and presented at trial and denied the motion in its entirety. We cannot accept the absence of a ruling as an implicit denial for the purpose of appellate review. *See State v. Green*, 680 N.W.2d 370, 376 (Iowa 2004) (finding where the action was dismissed on other grounds, and the district court did not rule on the alternative ground, the alternative ground could not be reviewed on appeal) (citing *Junkins v. Branstad*, 421 N.W.2d 130, 135–36 (Iowa 1988) ("The district court made no ruling on the merits of the . . . petition or application . . . . We consequently have nothing to review.")).

"An equitable division is not necessarily an equal division." *Id.* (citing *In re Marriage of Anliker*, 694 N.W.2d 535, 542 (Iowa 2005)).

### 1. Dissipation of marital assets.

In dividing marital property, the court may consider one spouse's dissipation of marital assets before the divorce. *In re Marriage of Kimbro*, 826 N.W.2d 696, 700 (Iowa 2013). "The dissipation doctrine applies when a spouse's conduct during the period of separation 'results in the loss or disposal of property otherwise subject to division at the time of divorce.'" *Id.* at 700–01 (quoting *In re Marriage of Burgess*, 568 N.W.2d 827, 828 (Iowa Ct. App. 1997)). The doctrine does not apply "if the spending spouse used the monies for 'legitimate household and business expenses.'" *Id.* at 701 (quoting *In re Marriage of Fennelly & Breckenfelder*, 737 N.W.2d 97, 106 (Iowa 2007)).

Under the two-pronged test, the court must first decide "whether the alleged purpose of the expenditure is supported by the evidence." *Id.* (quoting *Fennelly*, 737 N.W.2d at 104). When a spouse can identify the assets allegedly dissipated, the burden shifts to the other spouse to show how the funds were spent through testimony or the production of receipts or similar evidence. *Id.* "It is not enough for a spouse to merely show the incurrence of expenditures during the period of separation." *Id.* On the second prong of the test, the court must identify the dissipation using the following factors:

> (1) the proximity of the expenditure to the parties' separation, (2) whether the expenditure was typical of expenditures made by the parties prior to the breakdown of the marriage, (3) whether the expenditure benefited the "joint" marital enterprise or was for the benefit of one spouse to the exclusion of the other, and (4) the need for, and the amount of, the expenditure.

*Id.* (quoting *Fennelly*, 737 N.W.2d at 104–05).

Eddie complains about Kathy's repeated transfers of corporate funds into private accounts and her use of corporate accounts and credit cards to pay personal expenses. The district court recognized this was a pattern of conduct by both parties throughout their marriage and the dissolution proceedings. Eddie includes transfers and transactions dating back to their initial separation. But the court narrowed the relevant timeframe, declining to consider transactions back to December 2015 because the parties' "marriage continued to be on and off again since their initial separation and they shared and were aware of these expenditures." The court limited Eddie's claim, looking at expenditures from January 2017—roughly when the Macks split up for the final time—until the trial date. January 2017 is also when the court ordered the parties to stop personal spending from corporate accounts and to draw equal amounts from MHPI for salary and attorney fees.

At trial, the court noted a balance sheet submitted by Eddie's accountant, Richard Taylor, which calculated Kathy's additional personal expenditures in 2017 at $123,000 and Eddie's expenditures at $34,000, a difference of $89,000. The court noted at trial that Kathy proposed to cover discrepancies in the corporate funds with a payment of $70,000. The court ruled "for lack of further clarification," the amount Kathy overspent was $80,000 and charged half to Kathy and half to Eddie. The court did not analyze whether the expenditures were dissipated or legitimate household or business expenses. The court did not specify what expenditures it considered to be part of the $80,000.

Eddie contends the district court was "incorrect that the parties' short-lived attempted reconciliation in the fall of 2016 should mean that none of Kathy's improper use of marital and corporate funds prior to that time would be considered in the property division." He emphasizes parties can dissipate marital assets even when living together. *See In re Marriage of Grunder*, No. 13-1172, 2014 WL 2431464, at *4 (Iowa Ct. App. May 29, 2014) (citing *Fennelly*, 737 N.W.2d at 104–05). While Eddie's overall point is correct, it does not mean the district court failed to do equity here. The district court focused on the habitual conduct by parties in spending from corporate accounts to their mutual benefit until their final separation in January 2017. After that date, Kathy extracted $80,000 more in MHPI assets than did Eddie. By applying $40,000 to the equalization payment, the court evened out the funds each party took from the business during the separation. The limited timeframe was reasonable under the circumstances, and we will not disturb it.

### 2. *Valuation of marital assets.*

Eddie contends the district court erred in its valuation of three marital assets: MHPI, the duplex, and a 2008 Chevrolet Tahoe. We will not disturb the district court's valuation "when it is within the range of permissible evidence." *Hansen*, 733 N.W.2d at 703 (citing *In re Marriage of Wiedemann*, 402 N.W.2d 744, 748 (Iowa 1987)). We will address each asset in turn.

**MHPI.** Eddie complains when he offered to purchase the business, the court set the price at $467,840; but when the court awarded it to Kathy, it applied a value of only $351,000 and included all corporate accounts. He further argues the corporate accounts contained about twice as much cash as Kathy represented at the time, around $50,000. Essentially, he claims an inequitable division resulted

because Kathy received more business assets at a lower value without adequate justification.

At an unrecorded hearing June 12, 2017, the court engaged with the parties to determine a value for MHPI and who would operate it. Eddie agreed to a value of $467,840, but his purchase apparently was contingent on obtaining a $200,000 line of credit. He was unable to obtain a loan, and Kathy retained control of the company. At a pretrial conference in July, this time recorded, the court revalued the company based on Eddie's suggestion the real estate be sold through an agent and the equipment and inventory be sold at auction. Eddie estimated the sale of MHPI could bring $350,000. Less an auction fee of seven percent, the court estimated a value of $325,000, to which all parties agreed.

The court then asked Eddie, "So if I let Kathy take it for 320,000, and we credit on her side, you're good with that?" Eddie responded, "Yeah." Eddie then offered to take the property for the new valuation, to which the court responded, "You've already offered 467[,840]. You're the one that's trying to break the deal, to back out of the deal." Eddie had earlier testified he could no longer operate the business due to his health and it should be sold.

After discussing it with Kathy, her counsel told the court Kathy would take the business but wanted to include all accounts receivable and payable so she could continue to operate the business herself. The court determined the business accounts had a net value of $52,000. Splitting that value, the court offered to award the business to Kathy at an assigned value of $351,000. Kathy accepted and assumed exclusive control of the business, all inventory, and all accounts receivable and payable. Eddie did not object.

Eddie now complains the accounts included more cash than initially represented, but both parties acknowledged the amounts fluctuated on a daily basis due to taxes, payroll, and other cash flow. The company's valuation fell within the permissible range of evidence, mostly agreed to by Eddie, and we see no reason to disturb it.

**Duplex.** The Macks owned a duplex in Audubon. The decree awarded the property to Kathy at a value of $40,000. Eddie claims that award was in error because Kathy agreed to "take the duplex for $45,000." He valued the property at $35,000 during pretrial discussions. On appeal, he asks us to award the duplex to him at a value of $35,000. We decline to do so. The court's $40,000 valuation is reasonable and within a permissible range of evidence.

**2008 Chevrolet Tahoe.** Eddie next contends the district court improperly valued the Tahoe. The parties loaned their daughter, Nikki, $25,500 to buy the Tahoe. Kathy testified Nikki had been making payments on the loan and submitted a balance sheet showing Nikki still owed $15,674. Eddie testified Nikki never made payments but did not offer alternative documentation of the unpaid amount. Any payments Nikki made into the corporate accounts were part of the marital estate. The remaining balance of the loan was awarded to Kathy, and we do not find the value to be unreasonable or outside the permissible range of evidence offered in proof. We will not modify the court's assessment.

### 3.    *Contract payments involving his son*

Because of his strained relationship with his adult son, Eddie argues the district court should have awarded the contract on a van (being purchased by the son's girlfriend) and the purchase contract for a house (on which the son still owed $5750) to Kathy, or alternatively ordered the sale of these assets and divided the proceeds.  Because his son assaulted him, Eddie has a no-contact order.  We do not see the no-contact order as an insurmountable hurdle to collecting the payments due on these contracts.[6]  We decline to disturb this award.

### 4.    *Calculation of equalization payment.*

Eddie next attacks the equalization payment for two minor discrepancies. First, he contends the district court failed to account for the $5000 value of an empty lot next to Kathy's house that she was in the process of purchasing. Second, he flags a mathematical error.  We are somewhat hampered in our review because the district court did not include an explicit accounting or balance sheet showing how it valued and divided the property.

From the trial transcript, it does not appear the court considered the additional lot, but the decree does award it, without valuation, to Kathy.  Kathy argues in her appellee's brief that because she has not yet paid for it, the court was correct in attaching no value.  We accept Kathy's argument on this point and decline to change the calculation.

Eddie also asserts the district court miscalculated the assets awarded to Kathy.  On the record, the court added up the value of the parties' awards and

---

[6] Eddie could ask the district court to modify the no-contact order to allow oral or written communication related to these contracts or allow counsel to pursue such communication.

announced a total of $517,221 for Kathy and $74,565 for Eddie. On appeal, Eddie contends the assets awarded to Kathy carried a total value of $553,221—$36,000 more than the sum reached by the district court at trial. On our review, we agree the court's tally mistakenly excluded $21,000 for the value of their daughter Nikki's house and $15,000 for the value of a 2009 Silverado. Because Kathy's awarded assets totaled $553,221, we conclude an equitable division would require an equalization payment of $239,328 from Kathy to Eddie, rather than $221,328 as the court calculated. When we add $40,000 from Kathy's unequal use of corporate assets during the separation, Kathy's total equalization payment should be $279,328.[7]

Per the court's order, Kathy made an initial payment of $61,328 on September 1, 2017. The court directed her to pay installments of $1250 per week thereafter for a period of 160 weeks. We conclude the same installments should be paid through the Audubon County Clerk of Court for the additional $18,000 owed to Eddie. Kathy will continue to make payments at the same rate and frequency until the entire equalization amount is paid.[8] We affirm this aspect of the decree as modified.

---

[7] The district court awarded assets to Kathy in the amount of $553,221 and to Eddie in the amount of $74,565 for a total marital estate worth $627,786. Had the estate been divided down the middle, each party would have received $313,893. Thus, the court should have ordered Kathy to make a cash equalization payment to Eddie of $239,328, or half the value of the marital estate ($313,893) minus his award ($74,565). On top of that $239,328 equalization amount, Kathy owed Eddie another $40,000 for the additional corporate assets she spent after January 2017. The court should have ordered a total of $279,328 in cash equalization from Kathy to Eddie.

[8] At the rate of $1250 per week, Kathy will be required to make another fifteen payments, which stretches the total repayment period to roughly three years and four months.

### 5.     *Interest, payment acceleration, or other remedies*

Eddie complains the district court did not impose interest or an acceleration clause on the equalization payment.  He asks us to increase the amount of the payment, clarify that it is an enforceable "judgment" as opposed to a mere "cash settlement," give him an equitable or Uniform Commercial Code lien on Kathy's stock in MHPI, and enter an acceleration clause in case Kathy stops making payments.  Eddie included each of these requests in his motion to amend.  The district court denied the requests generally but stated, "[T]he Court specifically confirms that the court-ordered weekly property settlement payments, if timely paid, are due without interest."

Awarding interest on an equalization payment is not necessary where the division is still equitable.  *See In re Marriage of Vanderpol*, 529 N.W.2d 603, 605–06 (Iowa Ct. App. 1994).  Kathy's share of the property division is significantly larger than Eddie's because Kathy was awarded the business—not cash or a fungible asset.  The result is equitable because the business is not guaranteed to increase in value—it depends upon Kathy's work to keep it profitable.  *See In re Marriage of Conley*, 284 N.W.2d 220, 224 (Iowa 1979) (finding an interest clause equitable where the major asset awarded to the husband was farmland but the main source of income was husband's employment, and holding where farmland was an investment that would accrue value, "it may well be expected to bear some of the burden of an equitable property division").  Paying Eddie weekly enables Kathy to complete the equalization payment in a reasonable time without having to sell property or the business.  The resulting division is equitable, as modified, and we will not add an interest or acceleration clause.  We see no reason to further

clarify the language of the equalization payment—the decree placed an obligation on Kathy, a judgment against her, and Eddie has available enforcement mechanisms to ensure she pays the installments.

### C. Noncompetition Clause.

Eddie complains the decree's noncompetition clause was "beyond the authority of the court to order." He also argues it is unenforceable as to duration because, while the equalization payments span roughly three years, he is prohibited from business competition for four years. We are not persuaded by his duration argument. Aluminum scrapping is not the only kind of work Eddie can perform. In fact, he asserted at trial he could not physically do it anymore and recommended selling the business before the court awarded it to Kathy.

On the larger question of whether the court had authority to enter a noncompetition clause, we find little guidance in Iowa law. Eddie cites cases discussing the fairness of noncompetition clauses in employment contracts, not as they relate to the equitable division of property in a dissolution proceeding. *See generally Iowa Glass Depot, Inc. v. Jindrich*, 338 N.W.2d 376 (Iowa 1983); *Baker v. Starkey*, 144 N.W.2d 889 (Iowa 1966); *Rasmussen Heating & Cooling, Inc. v. Idso*, 463 N.W.2d 703 (Iowa Ct. App. 1990).

Nonetheless, we recognize the district court has broad jurisdiction "to settle the property rights of the parties and to award full relief respecting the property." *Davis v. Davis*, 292 N.W. 804, 808 (Iowa 1940). Sitting in equity, the court "may exercise broad powers in applying equitable principles." *In re Marriage of Gallagher*, 539 N.W.2d 479, 481 (Iowa 1995) (citation omitted). A court of equity "seeks to do justice and equity between all parties . . . and it looks at the whole

situation." *In re Marriage of Williams*, 199 N.W.2d 339, 350 (Iowa 1972) (quoting 39 C.J.S. *Equity* § 89 (1972)). "[T]he equities on both sides are to be considered." *Id.* (quoting 39 C.J.S. *Equity* § 89).

If we struck the noncompetition clause and Eddie returned to scrapping as a local competitor to Kathy, it would diminish the value of the MHPI. Kathy's forensic accountant, Ron Nielsen, testified that in their small town, Kathy would be unable to operate the business profitably without a noncompetition clause. Given that Eddie will be given a weekly equalization payment from the business proceeds, the noncompetition clause is equitable to preserve Kathy's ability to get the benefit of her bargain in taking and operating the business.

We conclude the court had authority to impose the noncompetition clause and the circumstances support its inclusion in the decree. *See Moser v. Thorp Sales Corp.*, 312 N.W.2d 881, 893 (Iowa 1981) ("Wherever a situation exists which is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation, though no similar relief has been given before." (citation omitted)). A noncompetition clause, though applying limitations consistent with contracting parties, is a reasonable exercise of the court's mandate to achieve equity. *See Kelly v. Kelly*, 806 N.W.2d 133, 144 (N.D. 2011) ("Although the provisions for contractual restraints on a business in N.D.C.C. § 9–08–06(1) are not directly applicable to property distributions in a divorce decree, we conclude public policy and legal consistency warrant the district court exercising its authority to distribute marital property in conformity with limitations imposed on contracting parties . . . ."). We will not remove or modify the noncompetition provision.

**D.    Trial and Appellate Attorney Fees.**

Eddie asserts he is entitled to attorney fees because Kathy transferred $14,000 from the corporate account to pay her lawyers.    The court has considerable discretion in awarding attorney fees.  *In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013).  Here, the district court made the parties responsible for their own attorney fees.  We find the court abused its discretion in not addressing Kathy's use of joint funds for her representation; to equalize the situation, we direct Kathy to pay $7000 toward Eddie's trial attorney fees.

Eddie and Kathy both request attorney fees for this appeal.  We decline to award either party appellate attorney fees.  *See In re Marriage of Stenzel*, 908 N.W.2d 524, 538 (Iowa Ct. App. 2018) (concluding each party had means to pay own fees).  Costs of this appeal are divided equally between the parties.

**AFFIRMED AS MODIFIED.**