In re the MARRIAGE OF David
ROSEBERRY and Connie
L. Roseberry.

Upon the Petition of David
Roseberry, Appellee,

And Concerning Connie L. Roseberry
n/k/a Connie L. Moore,
Appellant.

No. 98–804.

Supreme Court of Iowa.

Dec. 22, 1999.

David C. Thompson, Vinton, for appellant.

Stephen B. Jackson and Stephen B. Jackson, Jr., Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and TERNUS, JJ.

LAVORATO, Justice.

Respondent, Connie Roseberry (now known as Connie Moore), appealed from a summary judgment ruling barring her from relitigating paternity of her child born after Connie's divorce from the petitioner, David Roseberry. Connie also challenged a district court order sealing genetic test results and a subsequent district court order denying her request to unseal the test results.

We transferred the case to the court of appeals. The court of appeals concluded Connie was barred from relitigating paternity. The court of appeals also concluded that the district court should have unsealed the test results and remanded with directions to the district court to unseal the results. In a plurality opinion, the court of appeals decided the child was not barred from litigating paternity and to that end remanded with directions to the district court to appoint an attorney for the child and to entertain the child's action to reconsider paternity.

We affirm the court of appeals and district court decisions barring respondent from relitigating the paternity issue. We vacate the court of appeals decision in all other respects, affirm the district court decision, and remand with directions.

## I. Background Facts and Proceedings.

David and Connie were married on May 10, 1977. On November 19, 1985, David filed a petition for dissolution of marriage. While the petition was pending, David and Connie attempted a brief reconciliation. On October 3, 1986, the district court entered a decree of dissolution.

In the decree of dissolution, the district court incorporated by reference a stipulation concerning the distribution of marital assets and the custody and support of the parties' three children: Joshua born February 16, 1977; Roger, born July 11, 1979; and Mickey, born January 1, 1983. Connie was awarded the primary custodial care of the children.

At the time of the dissolution, Connie was approximately seven months pregnant. Both the stipulation and decree specifically stated, however, that David was not the father of the unborn child and that David would have no support obligations for the child. Connie and David were represented by counsel. Approximately one month after the decree was entered, Alishia Nicole Moore was born.

During the ten years following the dissolution, Connie filed several modification actions regarding child support, custody, and visitation. Her pleadings referred only to Joshua, Roger, and Mickey. None of these documents ever referred to Alishia.

On November 6, 1996, Connie filed an application for modification of the parties' dissolution decree regarding child support and post-high school expenses for the three children, Joshua, Roger, and Mickey. As she had done in the past, Connie did not mention Alishia in this application.

Several months later, Connie filed a motion to amend her application for modification. In the motion, she alleged that David was Alishia's father and that Connie became pregnant with Alishia during the parties' attempted reconciliation before the divorce. Connie supported these allegations by affidavit. Connie asked for a determination of paternity by genetic testing and payment of past and current child support. Connie agreed to pay in advance for the genetic testing and asked for partial reimbursement only if the tests revealed that David was Alishia's father.

On February 10, 1998, District Judge William L. Thomas found that Connie's motion to amend was unresisted and granted her leave to amend. On February 16, David filed a motion to vacate the order. District Judge Lynne E. Brady overruled David's motion and added paternity of Alishia and her support as issues for trial set for May 8. Judge Brady also ordered genetic testing to determine paternity.

Later, David filed a motion for summary judgment and adjudication of law points, alleging that issue preclusion barred Connie from relitigating paternity of Alishia and child support for her. Connie resisted, contending that the dissolution court had no subject matter jurisdiction over the unborn child and therefore issue preclusion did not apply. In the alternative, Connie contended that Iowa Code section 600B.41 (providing procedure for overcoming paternity that is legally established) allowed her to contest the paternity finding notwithstanding the prior adjudication by the dissolution court.

On April 1 District Judge David M. Remley sustained David's motion for summary judgment and adjudication of law points. In his ruling, Judge Remley found the dissolution court did have subject matter jurisdiction to determine paternity. In so ruling, the judge relied on Iowa Code section 600B.9 (providing that paternity proceedings may be instituted during the pregnancy of the mother or after the birth of the child, but except with the consent of all parties, the trial shall not be held until after the birth of the child).

Judge Remley also concluded that (1) Iowa Code section 600B.41A did not apply, and (2) issue preclusion barred Connie from relitigating paternity of Alishia because the dissolution decree had resolved the paternity issue.

On April 22 David filed a "motion to stop genetic testing and motion to destroy genetic samples." The next day Judge Remley denied David's motion but ordered the test results sealed and not to be released "to anyone except by subsequent order of court after notice and hearing." In his ruling, the judge explained why he denied David's motion:

> The parties and the child were scheduled to present themselves for genetic testing on March 31, 1998, pursuant to prior order of court. [Connie] had prepaid the costs of genetic testing and the costs were not refundable. At the March 24, 1998, [summary judgment] hearing, [Connie's] counsel requested that since [Connie] had advanced the cost of testing that the Court permit the genetic testing to be conducted even if [David's] motion for summary judgment was granted. *The basis for [Connie's] request was that in the event that [Connie] chose to appeal a ruling adverse to [Connie] on [David's] motion for summary judgment and [Connie's] appeal was successful, the genetic testing would be complete.* On April 1, 1998, the motion for summary judgment was granted.
>
> [David] has failed to demonstrate that he will be prejudiced by the completion of the genetic testing. The Court concludes that [David's] motion should be overruled and denied *for the reasons stated by [Connie's] counsel at the March 24, 1998, hearing.*

(Emphasis added.)

On April 22 Connie filed a "motion to unseal genetic test results." In her motion,

Connie alleged the genetic testing had been completed and that it was imperative that she know the test results so that she could intelligently decide whether to appeal the summary judgment ruling. David resisted. On April 28 Judge Remley overruled Connie's motion. In his ruling, the judge explained:

> The Court previously concluded that the paternity action was barred by issue preclusion. In view of that ruling and the reasons given by [Connie] at the time of the March 24, 1998, hearing in support of going forward with the test and the reasons now being given in support of [Connie's] motion to unseal genetic test results, the Court concludes that the genetic test results should remain sealed *unless [Connie] is successful in any appeal she might take to the Supreme Court with respect to the Court's ruling on [David's] motion for summary judgment and to adjudicate law points.*

(Emphasis added.)

Connie appealed, challenging the rulings on (1) David's motion for summary judgment, (2) David's motion to stop genetic testing and to destroy genetic samples, and (3) Connie's motion to unseal the genetic test results.

We transferred the case to the court of appeals. One judge took no part. One judge writing for the majority came to the following conclusions. Issue preclusion prevented Connie from relitigating paternity. Issue preclusion, however, did not bar Alishia from litigating paternity because her interests were not represented by her mother at the time of the dissolution. The genetic test results should be released because (1) there was no basis to preclude Alishia from using the tests to support her claim to modify paternity and (2) public policy supported modification of paternity determinations when results of genetic testing are contrary to prior determinations of paternity.

The opinion writer therefore (1) affirmed on the issue preclusion issue as to Connie, (2) reversed on any determination that Alishia's claim for modification of paternity was barred, (3) remanded for appointment of an attorney for Alishia and for the district court to entertain a modification action to reconsider Alishia's paternity, and (4) directed the district court to unseal the genetic test results and receive the results in evidence if proper foundation is established.

Two judges specially concurred. They concluded that, because Alishia's interests in child support are derivative of Connie's, it was an unavoidable conclusion that the matter had been fully and fairly litigated as to both Connie and Alishia. They suggested that reversal and remand was appropriate, however, because there was a factual question as to whether Connie could avoid issue preclusion by invoking the court's powers of equity to set aside the dissolution decree obtained by extrinsic fraud. In concurring with the majority in all other respects, the two concurring judges agreed that the genetic test results should be unsealed.

Two judges dissented. They concluded that Connie and Alishia were both barred by issue preclusion from relitigating paternity. They also concluded that Iowa Code section 600B.41A did not provide a mechanism for avoiding issue preclusion. And they rejected any notion that Connie could avoid issue preclusion by rule or by a court's general equitable powers on the grounds of fraud given her ten years of silence. Finally, they concluded that the test results should have been released under Iowa Rule of Civil Procedure 123 (providing that the court "for good cause shown" may make any order regarding discovery "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"). The dissenters concluded that David failed to show "good cause" for the genetic test results to remain sealed. In sum, they suggested the summary judgment ruling should be affirmed

and the genetic test results order should be reversed.

We granted David's application for further review. Notwithstanding the various theories propounded in the court of appeals decision, he insists the summary judgment ruling was correct and the district court's two rulings sealing the genetic test results and refusing to unseal them were correct.

Connie filed on her own behalf a resistance to David's application for further review, contending that Alishia's rights to litigate paternity should not be cut off. However we decide the case, Connie contends Alishia has the right to know the genetic test results.

## II. The Issues.

As we mentioned, Connie resisted David's motion for summary judgment on two grounds. She first contended that issue preclusion did not apply because the district court did not have subject matter jurisdiction over the unborn child at the time of the dissolution decree. In the alternative, she contended that, under the provisions of section 600B.41A, the court had jurisdiction to establish paternity.

■ Connie did not contend nor did the district court decide that Alishia in her own right could litigate paternity. Alishia is not even a party to these proceedings. There was therefore nothing for the court of appeals to review on this issue. We therefore vacate that part of the court of appeals decision that remanded for the appointment of an attorney for Alishia and for the district court to entertain a modification action to reconsider Alishia's paternity.

■ In addition, Connie did not contend, nor did the district court decide, that Connie could avoid the preclusive effect of the dissolution decree because of extrinsic fraud. There was therefore nothing for the court of appeals to review on this issue either.

In her appellate brief, Connie does not contest the district court's issue preclusion finding. Rather, she contends Iowa Code section 600B.41A allowed her to contest the paternity finding notwithstanding the prior adjudication by the dissolution decree. The district court concluded otherwise. Connie has preserved error on the district court's determination regarding section 600B.41A. Connie also challenges the district court's rulings on sealing and refusing to unseal the genetic test results. She also preserved error on this issue.

**A. Iowa Code section 600B.41A.** Iowa Code section 598.21(4A) provides:

If, during an action initiated under this chapter or any other chapter in which a child or medical support obligation may be established based upon a prior determination of paternity, a party wishes to contest paternity of the child or children involved, all of the following apply:

*a.* (1) If the prior determination of paternity is based on ... a court or administrative order entered in this state ... the provisions of section 600B.41A apply.

Iowa Code section 600B.41A provides:

1. *Paternity which is legally established may be overcome as provided in this section if subsequent blood or genetic testing indicates that the previously established father of a child is not the biological father of the child.* Unless otherwise provided in this section, this section applies to the overcoming of paternity which has been established according to any of the means provided in section 252A.3, subsection 8, by operation of law when the established father and the mother of the children are or were married to each other, or as determined by a court of this state under any other applicable chapter.

(Emphasis added.)

Whether these provisions allow Connie to relitigate the issue of paternity turns on our interpretation of them. This is a legal

question. Therefore, summary judgment and adjudication of law points are appropriate vehicles to decide the question. *See In re Junkins v. Branstad,* 448 N.W.2d 480, 482 (Iowa 1989).

■ We agree with the district court that these two statutory provisions do not allow Connie to relitigate the issue of paternity in the face of the preclusive effect of the dissolution decree on Alishia's paternity. As the district court concluded, section 600B.41A specifically provides for actions to *overcome* paternity that has been *previously legally established.* There is no corresponding statutory provision that provides for an action to establish paternity by naming as the biological father a person who has previously been found by a court determination *not* to be the biological father. The district court was therefore correct in sustaining David's motion for summary judgment on this issue. The court of appeals was likewise correct in concluding that Connie could not relitigate Alishia's paternity. We affirm the court of appeals and the district court decisions on this issue.

■ **B. The district court's action in sealing and refusing to unseal the genetic test results.** As mentioned, Connie challenges the district court's April 9, 1998 order sealing the genetic test results and the court's April 28, 1998 order refusing to unseal the genetic test results. In support of her challenge, Connie contends that Iowa Rule of Civil Procedure 123 controls. Rule 123 provides in relevant part:

    *a.* Upon motion by a party . . . and for good cause shown, the court in which the action is pending . . . :

    (1) May make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . .

Connie points to the district court's finding that David would not be prejudiced by the completion of the genetic testing and that she had prepaid the cost of the test-

ing. Because of these findings, Connie insists David could not, and did not, argue that the costs would be unduly burdensome or oppressive or that he would suffer annoyance, embarrassment, or oppression.

■ Connie's contentions must fail for two reasons. First, she did not raise rule 123 to support her position. She therefore preserved nothing for appellate review regarding rule 123.

Second, she ignores the reasons underlying the court's rulings. In denying David's motion to stop genetic testing and to destroy the genetic samples, the district court was simply carrying out Connie's wishes expressed at the summary judgment hearing. Her counsel had argued that, since Connie had already advanced the cost of testing, the court should allow the testing to be completed. As the district court noted in its April 9 ruling, the basis for her request was that, if she chose to appeal an adverse ruling on David's motion for summary judgment and her appeal was successful, the genetic testing would already be done.

When the district court ruled on David's motion to stop genetic testing, the testing had not been completed. In these circumstances, the district court would have been justified in stopping the testing because the results would have been irrelevant in view of the court's summary judgment ruling. For this reason, the court was justified in attaching a condition to keep the status quo—sealing the test results until an appellate ruling on Connie's anticipated appeal. Therefore, in sealing the test results, the district court acted well within its discretion.

In denying Connie's request to unseal the genetic test results in its April 28 ruling, the district court again explained that it had allowed the genetic testing to go forward at Connie's request for the reasons her counsel had argued at the summary judgment hearing. Nothing had changed since its April 9 ruling. If Connie's appeal was unsuccessful, the genetic

test results would be irrelevant to these proceedings. The district court again acted well within its discretion in denying Connie's request to unseal the genetic test results.

We therefore vacate the court of appeals decision and affirm the district court decision on this issue.

### III. Disposition.

In sum, we conclude the court of appeals and the district court were correct in concluding Connie was precluded from relitigating Alishia's paternity and therefore affirm the court of appeals and the district court decisions on this issue.

Alishia was not a party to these proceedings. Consequently, Connie could not and did not preserve any issue on the child's right to litigate paternity. We do not intend to imply one way or the other whether the child would be successful in any action on her behalf to litigate the paternity issue because the issue is simply not before us. We vacate the court of appeals decision recognizing Alishia's right to litigate paternity in this proceeding. We also vacate its remand order directing the district court to appoint an attorney for Alishia and to entertain a modification action to reconsider Alishia's paternity.

The district court acted well within its discretion in sealing the genetic test results and refusing to unseal them at Connie's request. We therefore vacate the court of appeals decision to unseal the genetic test results and affirm the district court's two rulings on this issue.

We remand for further proceedings to allow the district court to rule on any motions that might be filed regarding disposition of the genetic test results.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED; REMANDED WITH DIRECTIONS.**