# In the Iowa Supreme Court

No. 23–2114

Submitted April 16, 2025—Filed June 13, 2025

**State of Iowa,**

Appellant,

vs.

**Charles Aaron Amble** and **John Joseph Mandracchia,**

Appellees.

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, judge.

The State appeals the district court's ruling declaring Iowa Code section 808.16 facially unconstitutional and granting the defendants' motions to suppress evidence obtained through warrantless searches of garbage. **District Court Ruling Reversed and Case Remanded.**

Waterman, J., delivered the opinion of the court, in which all justices joined except McDermott, J., who filed a dissenting opinion.

Brenna Bird, Attorney General; Eric Wessan (argued), Solicitor General; and Aaron Rogers, Assistant Attorney General, for appellant.

Christopher A. Kragnes, Sr. (argued) of Kragnes & Associates, PC, Des Moines, for appellee Charles Aaron Amble.

Martha J. Lucey, State Appellate Defender, and Joshua Irwin (argued), Assistant Appellate Defender, for appellee John Joseph Mandracchia.

W. Charles Smithson, West Des Moines, for amicus curiae Twenty-Eight Iowa State Senators.

**Waterman, Justice.**

Do police officers need a warrant to search garbage bags placed curbside for collection? A divided court said yes in *State v. Wright*, 961 N.W.2d 396, 400, 415–19 (Iowa 2021), based on the search and seizure clause in article I, section 8 of the Iowa Constitution and a local antiscavenging ordinance that allowed only licensed solid waste collectors to pick up the garbage. The legislature responded by enacting Iowa Code section 808.16 (2023), which provides that such garbage is abandoned property and preempts conflicting local ordinances. We revisit the constitutionality of warrantless "trash pulls" in light of this new enactment.

In 2023, a concerned citizen tipped off police to suspected narcotics trafficking at a Des Moines house. Acting pursuant to section 808.16, police conducted warrantless searches of garbage bags that occupants had placed on the curb for collection. The trash pulls revealed evidence of drug dealing that the police used to obtain a warrant to search the home, where additional evidence was found. Two occupants were charged criminally and moved to suppress the evidence, contending that section 808.16 is unconstitutional. The district court granted their suppression motions, ruling that the entire statute is facially unconstitutional under article I, section 8 of the Iowa Constitution as interpreted in *Wright*. We granted the State's motion for discretionary review. The State argues that section 808.16 is constitutional facially and as applied under *Wright*. Alternatively, the State asks us to overrule *Wright*.

On our review, we conclude that the district court erred in granting the suppression motions. Article I, section 8 protects a person's "papers and effects" against unreasonable searches by the government. *Id.* But that constitutional protection does not apply to abandoned property. *Wright* relied on the municipal antiscavenging ordinance to hold that the defendant's garbage placed out for

collection was "not yet abandoned." 961 N.W.2d at 415–16. Such ordinances effectively have now been preempted by Iowa Code section 808.16(3), which provides, "Garbage placed outside of a person's residence for waste collection in a publicly accessible area shall be deemed abandoned property . . . ." We hold that this specific provision in section 808.16(3) is constitutional facially and as applied in this case and lawfully authorized the trash pulls at issue. We therefore reverse the district court's ruling and remand the case for further proceedings.

### I. Factual Background and Proceedings.

In October 2022, Urbandale Police Narcotics Detective Brad Frick began his assignment with the Mid-Iowa Narcotics Enforcement Task Force (MINE). In June 2023, he received a tip from a concerned citizen about "possible drug activity" at a specific house in the 2000 block of 38th Street in Des Moines. Frick investigated and determined that the house had three occupants: Teresa Amble, her husband Charles Amble, and John Mandracchia. Teresa owned the home, and the utilities were in Charles's name. Mandracchia and Teresa had no criminal records, while Charles had two criminal convictions in 2011 for failing to register as a sex offender.

Garbage was picked up streetside on Monday mornings. On Monday, July 3, Frick went to the 38th Street address at 5:15 a.m. and retrieved a white garbage bag from a trash bin set out by the curb. Frick searched the contents of the garbage bag and found paperwork from Walgreens for Charles, as well as small baggies and a pound-size package with THC labels that field-tested positive for marijuana. He concluded that the pound-sized package, together with smaller baggies, indicated that the occupants were breaking up larger quantities of marijuana into smaller packages to distribute. Frick transported this evidence to the MINE office.

On July 10, Frick returned to the location at 5:00 a.m. He pulled out two white garbage bags that contained an Amazon package addressed to Teresa and three baggies that field-tested positive for marijuana. He delivered this evidence to the MINE office.

On July 17, Frick returned at 5:05 a.m. He retrieved two black garbage bags that contained paperwork belonging to Mandracchia, a THC vape cartridge, and two packages designed for THC products. The THC vape cartridge field-tested positive for marijuana. As Frick later explained, the THC vape cartridge was evidence of drug dealing:

> One of the THC vape cartridge packages says that it is from California. I know, based on training and experience that marijuana distributors will buy marijuana products from states where marijuana is legal and resell them in states where marijuana is illegal. The THC packaging from California, located in the trash receptacle on the above-described occasion is consistent with such practices.

Frick took this evidence to the MINE office. Frick conducted all three trash pulls at the public street curb outside the curtilage of the 38th Street house.

Relying on the evidence obtained from these trash pulls, Frick applied for and obtained a search warrant for the 38th Street house. Officers executed the warrant and found additional evidence of drug distribution inside the home. Charles and Mandracchia were charged with possession of a controlled substance with intent to deliver in violation of Iowa Code section 124.401(1)(*d*). Charles was also charged with possession of a controlled substance in violation of section 124.401(5) and failure to possess a tax stamp in violation of sections 453B.3 and 453B.12.

The defendants filed motions to suppress the evidence found in the garbage bags as well as the evidence obtained by the search of the house as fruits of the poisonous tree. The district court held a hearing on the motions.

Neither the State nor the defendants called any witnesses. The State conceded that if the searches of the garbage bags were unconstitutional, then the search warrant for the 38th Street house was invalid because the evidence found in the trash pulls had provided the probable cause justifying the warrant to search the home. Similarly, the defendants conceded that if the trash pulls were constitutional, then the search warrant was supported by probable cause. As the district court succinctly summarized the parties' positions, "trash rips, good; warrant, good. Trash rips, not good, everything gets excluded."

The defendants argued that "the Supreme Court found in *State v. Wright* . . . that an officer's warrantless seizure of trash bags and subsequent search of the contents within, were a violation of a citizen's reasonable expectation of privacy and thus violates [a]rticle I, [s]ection 8 of the Iowa Constitution." The State argued that Iowa Code section 808.16 authorized Frick's trash pulls consistent with *Wright*. The defendants responded by arguing that section 808.16 is facially unconstitutional.

The district court ruled that Iowa Code section 808.16 is facially unconstitutional in its entirety, and the evidence obtained from the garbage bags and the search of the house must be suppressed. The district court ruled that the legislature violated the separation of powers doctrine when it enacted Iowa Code section 808.16:

> It is clear from a plain reading of the statute that the legislature intended to do far more than simply clarify the property rights of a resident in his or her garbage, as suggested by the state. It addressed what is or is not a citizen's reasonable expectation of privacy, what are to be considered constitutionally protected papers and effects, and dictates when a warrantless search can occur. All of these subjects derive from article I, section 8 of the Iowa Constitution, a source whose meaning is left to the courts as the final arbiter. While this role as final arbiter is typically applied to justify the Iowa court's independence from federal interpretations of similar language in the United States Constitution, it is equally

applicable in determining who has the final say vis-à-vis the legislature in determining what is constitutional . . . .

(Footnote omitted) (citations omitted.) The State filed a motion to reconsider, which the district court denied. The State then filed an application for discretionary review, which we granted.

On appeal, the State argues that Iowa Code section 808.16 is constitutional on its face and as applied. Specifically, the State asserts that "*Wright* explained that the positive law sets expectations for privacy under the Iowa Constitution, and the district court erred by interpreting *Wright* as instead constitutionalizing the then-existing positive law." The State reasons that Iowa Code section 808.16 amends the currently existing positive law that undergirds the *Wright* analysis. In the alternative, *if* section 808.16 cannot be harmonized with *Wright*'s constitutional analysis, the State asks us to overrule *Wright*.

The defendants argue that the district court's ruling was correct. Mandracchia argues that "[e]ach portion of section 808.16 purports to make constitutional determinations, with the plain purpose to overturn the Iowa Supreme Court's interpretation of the Iowa Constitution." Similarly, Charles argues that "there is no other way to interpret the legislature[']s actions other than an attempt to rewrite [a]rticle I, [s]ection 8." Accordingly, the defendants argue that the legislature overstepped by enacting a statute that "violates the constitutional separation of powers." The defendants contend that *Wright* was correctly decided and should not be overruled because "nothing is different today than it was when *Wright* was decided just three years ago." We retained the case.

## II. Standard of Review.

We review de novo a district court's ruling on a motion to suppress based on an alleged deprivation of a constitutional right. *State v. Young,* 15 N.W.3d 61, 64 (Iowa 2024). "We independently evaluate the entire record and consider the

totality of the circumstances." *Id.* (quoting *State v. Bauler,* 8 N.W.3d 892, 897 (Iowa 2024)). "We defer to the findings of fact made by the district court, 'but we are not bound by them.' " *Id.* (quoting *Bauler*, 8 N.W.3d at 897).

**III. Analysis.**

The State argues that the garbage Detective Frick searched without a warrant was abandoned property under Iowa Code section 808.16(3). The defendants argue that the district court correctly ruled that the entire statute is unconstitutional under *Wright* because their garbage included their "papers and effects" entitled to protection under article I, section 8 of the Iowa Constitution, which states,

> The right of the people to be secure in their persons, houses, *papers and effects*, against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the persons and things to be seized.

(Emphasis added.)

In holding that a police officer's warrantless trash pull was unconstitutional under article I, section 8, *Wright* expressly relied on positive law, specifically a local antiscavenging ordinance. *See* 961 N.W.2d at 415–19. We emphasized that point in *State v. Bauler*:

> We begin by summarizing *Wright*. It is important to note that some of the lead opinion in *Wright*—specifically parts II, III, and IV(A), including footnote 5—did not have the support of a majority. *See* [961 N.W.2d] at 420 (Appel, J., specially concurring). In the portions of the opinion that had the support of a majority, this court decided: (1) that the defendant had not abandoned the garbage because a local ordinance prohibited anyone from taking or collecting any solid waste which has been put for collection "unless such person is an authorized solid waste collector," *id.* at 415–16 (quoting Clear Lake, Iowa, Code of Ordinances § 105.11(4) (2003)); (2) that the officer committed a trespass because he violated this ordinance, *id.* at 416–17; and (3) that the officer also violated the

> defendant's reasonable expectations of privacy because the defendant had a reasonable expectation of privacy based on the ordinance, *id.* at 418–19. In other words, *Wright* appeared to hang its hat primarily on the terms of a local ordinance prohibiting "scavenging." *See id.* at 415–17. In doing so, *Wright* incorporated concepts set forth in a 2016 law review article—William Baude & James Y. Stern, *The Positive Law Model of the Fourth Amendment*, 129 Harv. L. Rev. 1821 (2016) [hereinafter Baude & Stern]. *See Wright*, 961 N.W.2d at 416–17.

8 N.W.3d at 903–04 (footnote omitted).

*Wright* thereby signaled that changes in state or local property law governing trash disposal could, in turn, allow constitutional trash pulls by police. *See* 961 N.W.2d at 415–17. The legislature promptly responded to *Wright* by enacting Iowa Code section 808.16. A state statute generally will preempt a conflicting local ordinance. *See City of Davenport v. Seymour*, 755 N.W.2d 533, 538–39 (Iowa 2008) (explaining preemption doctrine).

While the legislature clearly can override local antiscavenging ordinances, it is equally "axiomatic that the legislature cannot pass a statute to override a constitutional command." *Site A Landowners v. S. Cent. Reg'l Airport Agency*, 977 N.W.2d 486, 499 (Iowa 2022). "[T]he Iowa Supreme Court 'is the final arbiter' of what the Iowa Constitution means." *State v. Burns*, 988 N.W.2d 352, 360 (Iowa 2023) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940)). We must decide whether the district court erred by ruling that Iowa Code section 808.16 is facially unconstitutional in its entirety under *Wright*.

We begin with the text of the challenged statute. Iowa Code section 808.16 provides:

> 1. It is the public policy of this state that a person has no reasonable expectation of privacy in garbage placed outside of the person's residence for waste collection in a publicly accessible area.

2. A city or county shall only adopt an ordinance or a regulation concerning waste management and sanitation for the purposes of promoting public health and cleanliness. An ordinance or a regulation adopted by a city or county shall not be construed by a person to create a reasonable expectation of privacy in garbage placed outside of the person's residence for waste collection in a publicly accessible area.

3. Garbage placed outside of a person's residence for waste collection in a publicly accessible area shall be deemed abandoned property and shall not be considered to be constitutionally protected papers or effects of the person.

4. A peace officer may conduct a search and may seize garbage placed outside of a person's residence for waste collection in a publicly accessible area without making an application for a search warrant.

This statute was enacted in the next legislative session after *Wright. See* 2022 Iowa Acts ch. 1022 (codified at Iowa Code § 808.16). The obvious purpose of the statute is to restore the authority of law enforcement to conduct warrantless searches of garbage placed out for collection in a public area not within the curtilage of a private home.[1] To achieve that goal, the statute employs a four-pronged belt-and-suspenders approach: (1) by declaring that persons have no reasonable expectation of privacy in such garbage, Iowa Code § 808.16(1); (2) by overriding conflicting local ordinances, *id.* § 808.16(2); (3) by providing that such garbage is deemed abandoned, *id.* § 808.16(3); and (4) by providing that police officers may search such garbage without a warrant, *id.* § 808.16(4). The statute further declares that such garbage "shall not be

---

[1]Until *Wright*, Iowa law enforcement routinely conducted warrantless trash pulls based on federal and Iowa precedent holding that garbage left curbside for collection was unprotected by the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. *See California v. Greenwood*, 486 U.S. 35, 40–41(1988) (Fourth Amendment); *State v. Henderson*, 435 N.W.2d 394, 396–97 (Iowa Ct. App. 1988) (article I, section 8), *overruled by, Wright*, 961 N.W.2d 396.

considered to be constitutionally protected papers or effects of the person." *Id.* § 808.16(3).

"[W]e presume statutes are constitutional, 'imposing on the challenger the heavy burden of rebutting that presumption.'" *Summit Carbon Sols., LLC v. Kasischke*, 14 N.W.3d 119, 126 (Iowa 2024) (alteration in original) (quoting *In re Guardianship of L.Y.*, 968 N.W.2d 882, 892 (Iowa 2022)); *see also* Iowa Code § 4.4(1) ("In enacting a statute, it is presumed that . . . [c]ompliance with the Constitutions of the state and of the United States is intended."). The defendants argued, and the district court ruled, that section 808.16 is unconstitutional on its face. " 'A facial challenge asserts the law always operates unconstitutionally and not just as applied in particular circumstances,' making it the most difficult challenge a plaintiff can mount." *Summit Carbon Sols.*, 14 N.W.3d at 126 (quoting *League of United Latin Am. Citizens of Iowa v. Pate*, 950 N.W.2d 204, 209 (Iowa 2020) (per curiam)). "If there is any set of facts where the statute could be held constitutional, we will reject the facial challenge." *Id.* Facial challenges are disfavored for good reasons. *See Singer v. City of Orange City*, 15 N.W.3d 70, 77 (Iowa 2024).

We conclude that Charles and Mandracchia failed to meet their heavy burden to show that section 808.16 *always* operates unconstitutionally. The district court erred by striking down the entire enactment as facially unconstitutional. The defendants' facial challenge fails because at least one severable provision of the statute operates constitutionally to authorize the challenged warrantless trash pulls. *See Breeden v. Iowa Dep't of Corr.*, 887 N.W.2d 602, 608–09 (Iowa 2016) (discussing severability doctrine).

That provision is found in subsection (3) of section 808.16, which states in pertinent part, "Garbage placed outside of a person's residence for waste

collection in a publicly accessible area shall be deemed abandoned property . . . ." Iowa Code § 808.16(3). In our view, this provision fits comfortably within the legislature's broad police power over public health, safety, and welfare. *See generally Gravert v. Nebergall*, 539 N.W.2d 184, 186 (Iowa 1995) ("Police power refers to the legislature's broad, inherent power to pass laws that promote the public health, safety, and welfare."); *see also Garrison v. New Fashion Pork LLP*, 977 N.W.2d 67, 85 (Iowa 2022) (applying deferential review to legislative enactments altering private property rights). The legislature has enacted legislation defining when property is abandoned in a variety of contexts.[2] Nothing in *Wright* precludes the legislature from conclusively declaring that Iowans have abandoned any ownership rights in trash they placed in garbage cans for collection outside their home's curtilage in a publicly accessible place.[3]

As noted, *Wright* repeatedly relied on positive law—specifically the local antiscavenging ordinance—to conclude that the defendant "had not yet abandoned" his papers and effects that he put in his garbage can for collection. 961 N.W.2d at 415–16 ("Until such time as the garbage bags were collected by a licensed collector and commingled with other garbage, Wright had not yet abandoned the property."); *see also id.* at 416–17 (relying on the antiscavenging ordinance to conclude that the officer's "warrantless seizures and searches were

---

[2]*See, e.g.*, Iowa Code § 163.3D (abandoned animals); *id.* § 321.89 (abandoned vehicles); *id.* § 455B.171(1) (abandoned wells); *id.* § 457A.3 (abandoned conservation easements); *id.* § 548.101(1) (abandoned trademarks); *id.* § 556G.1 (abandoned dry cleaning); *id.* § 657A.1 (abandoned buildings).

[3]We adhere to the constitutional avoidance doctrine and refrain from addressing the constitutionality of the remaining language in Iowa Code section 808.16(3), which declares that such garbage "shall not be considered to be constitutionally protected papers or effects of the person." That assertion logically follows abandonment, but it is our role, not the legislature's, to determine the constitutional protection afforded to papers and effects. That language is severable. *See Breedon*, 887 N.W.2d at 608–09 (addressing severability and constitutional avoidance).

thus an unlawful and unconstitutional physical trespass on Wright's papers and effects" in his not-yet abandoned garbage); *id.* at 417 (noting that the officer was bound to obey the antiscavenging ordinance and stating that "where municipal ordinances require trash collection by a licensed collector and prohibit unauthorized persons from tampering with trash, the ordinances 'should bring with them the protection of the Fourth Amendment' " (quoting Baude & Stern, 129 Harv. L. Rev. at 1882)).

*Wright* also expressly relied on the antiscavenging ordinance as the source of the defendant's reasonable expectation of privacy in his garbage placed out for collection:

> Here, Wright had an expectation based on positive law that his privacy, as a factual matter, would be lost, if at all, only in a certain, limited way. Specifically, Wright had an expectation based on positive law that his garbage bags would be accessed only by a licensed collector under contract with the city. *See* Clear Lake, Iowa, Code of Ordinances § 106.11. Wright had an expectation based on positive law that it would be unlawful for others to access his trash. *See id.* § 105.11(4); *see also Rakas v. Illinois*, 439 U.S. 128, 143 n.12, (1978) ("Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.").

*Id.* at 419. Conversely, the subsequent enactment of Iowa Code section 808.16(3) preempts such local ordinances and eviscerates any reasonable expectation of privacy in garbage placed curbside for collection.

As the foregoing discussions in *Wright* demonstrate, positive law, such as a local ordinance, can define private property rights and thereby affect the constitutional analysis of whether a person's papers and effects have been abandoned or not. And so, consistent with *Wright,* a change in the positive law can make a difference. That is where the subsequent enactment of Iowa Code

section 808.16(3) comes in. No longer may local antiscavenging ordinances support a finding that garbage placed outside defendants' property for collection is not yet abandoned. No longer may defendants claim that an officer conducting a trash pull has committed a trespass. And no longer may defendants claim a reasonable expectation of privacy in discarded trash. Section 808.16(3) trumps any inconsistent local ordinance as a matter of state property law. *See Seymour*, 755 N.W.2d at 538–39. Section 808.16(3) establishes that such garbage (including any papers or effects tossed out with it) has been abandoned as a matter of law. Defendants cannot claim a constitutional violation when police search abandoned property. *Abel v. United States*, 362 U.S. 217, 241 (1960); *Burns*, 988 N.W.2d at 367–68; *State v. Bumpus*, 459 N.W.2d 619, 625 (Iowa 1990).

We hold that the abandonment provision in Iowa Code section 808.16(3) is constitutional on its face and as applied here. Applying the constitutional avoidance doctrine, we do not address the constitutionality of other provisions in section 808.16, which in our view are severable. *See Breeden*, 887 N.W.2d at 608–09.[4]

---

[4]In *State v. Lowman*, the Iowa District Court for Marion County took the same approach that we do today. No. FECR033048 (Iowa Dist. Ct. May 2, 2024), *appeal filed*, No. 24–1388 (Aug. 29, 2024). In that case, the district court denied a motion to suppress evidence of methamphetamine dealing obtained in a warrantless trash pull and rejected a constitutional challenge to the abandonment provision in Iowa Code section 808.16(3). Judge Faith reasoned:

> [T]he Defendant articulates no reason and cites no authority for the proposition that the legislature cannot define circumstances in which property may be deemed legally abandoned. Indeed, if the court can consider positive law in the form of local garbage ordinances to establish when property *is not* abandoned, and these ordinances are not an intrusion on the Court's constitutional authority, it is hard to conceive of an intellectually consistent rationale for finding it unconstitutional for the state to enact positive law to establish when property *is* abandoned. In either case, the law in question does not define a constitutional right but provides a positive legal context for whether the owner's act should be construed as abandonment. The court need not determine if other portions of the statute are constitutional since only the "deemed abandon[ed]" language is needed for the present analysis.

*State v. Burns* is instructive. There, we determined that the defendant had abandoned a beverage straw he had used and voluntarily left behind after dining in a public restaurant. 988 N.W.2d at 363–64. We held that the straw containing his DNA was no longer *his* "effect" entitled to constitutional protection under article I, section 8. *Id.* at 367. We harmonized that conclusion with *Wright* as follows:

> In *Wright*, we explained that section 8 "precludes a peace officer from engaging in general criminal investigation that constitutes a trespass against a citizen's house, papers, or effects." Here, however, the police did not trespass against or otherwise seize or search Burns's person, his house, his papers, or his effects. So, *Wright* does not apply.

*Id.* (citation omitted) (quoting *Wright*, 961 N.W.2d at 417).[5]

Similarly, because under Iowa Code section 808.16(3), defendants Charles and Mandracchia had abandoned their papers and effects in the garbage they set out for collection, no constitutional violation occurred when Detective Frick searched the garbage bags without a warrant. Police lawfully used that evidence to establish probable cause for the validly issued warrant to search the Amble house. The district court erred by granting the defendants' motions to suppress.[6]

---

Based on the foregoing, this court concludes that the trash placed out for collection by the Defendant, under the facts and positive legal framework of this case, was bona vacantia, abandoned, and therefore was not his papers or effects at the time they were seized and searched.

*Id.* at 5–6.

[5]We also noted that Iowa Code section 729.6(3)(*c*)(2) allows law enforcement to collect and analyze DNA to "identify an individual in the course of a criminal investigation." *Burns*, 988 N.W.2d at 367 (quoting Iowa Code § 729.6(3)(*c*)(2)). Based on that positive law, we determined that "Burns could have no reasonable expectation that Iowa law enforcement would refrain from using his DNA in their efforts to identify [the victim's] killer." *Id.* Similarly, Iowa Code section 808.16(3) defeats any reasonable expectation of privacy in garbage placed out for collection on a public curb.

[6]*State v. Kuuttila*, 965 N.W.2d 484, 486–87 (Iowa 2021), and *State v. Hahn*, 961 N.W.2d 370, 372 (Iowa 2021), applied *Wright* without altering its positive law analysis. Both predated the enactment of section 808.16. Going forward, our decision today is the controlling precedent for reviewing trash pulls.

We determine that under the newly enacted and controlling statute, Iowa Code section 808.16(3), defendants Charles and Mandracchia abandoned the papers and effects they placed in the trash curbside for collection on July 3, 10, and 17, 2023, including the THC vape cartridge and the packaging and baggies with trace amounts of marijuana. Put another way, those items were no longer "their" effects at the time of the trash pulls and therefore were unprotected by the search and seizure clause of article I, section 8 of the Iowa Constitution. *See Wright*, 961 N.W.2d at 415 (observing that a police officer's search of garbage "would be inconsequential if the papers and effects did not belong" to the defendant).

The State urges our court to decide this appeal by harmonizing Iowa Code section 808.16 with *Wright*. We have resolved the appeal on that basis. We therefore do not reach the State's alternative argument that *Wright* should be overruled *if* section 808.16(3) cannot be harmonized with *Wright*. *See Goodwin v. Iowa Dist. Ct.*, 936 N.W.2d 634, 645 n.4 (Iowa 2019) ("We do not ordinarily overrule our precedent sua sponte." (quoting *Est. of McFarlin v. State*, 881 N.W.2d 51, 59 (Iowa 2016))).

**IV. Disposition.**

For the foregoing reasons, we reverse the district court's suppression ruling and remand the case for further proceedings consistent with this opinion.

**District Court Ruling Reversed and Case Remanded.**

All justices concur except McDermott, J., who files a dissenting opinion.

**McDermott, Justice (dissenting).**

With the passing of a statute declaring that trash left out for collection is "abandoned," police searches that we held not merely unlawful but *unconstitutional* several years ago are now greenlit. If the majority's interpretation of *State v. Wright* is correct—that all the search-and-seizure protection that the Iowa Constitution provides is what the legislature confers by statute—then *Wright*'s demise today is no loss at all. The three justices who wrote vigorous dissents in *Wright* certainly seemed to have thought that *Wright* stood for something more consequential or enduring. Because I reject the notion that the new statute requires us to find that the defendants have no privacy interest in their trash, and I would hold instead that the defendants' trash was protected from a warrantless search, I must respectfully dissent.

### I. The *Wright* Analysis.

The district court, relying on *Wright,* held that the officer's warrantless search of the defendants' trash in this case violated article I, section 8, of the Iowa Constitution. That provision states: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the persons and things to be seized." *Id.* Among the evils that the prohibition against unreasonable search and seizure was designed to protect against was the abuse of suspicionless general warrants. *See* William J. Cuddihy, *The Fourth Amendment: Origins and Original Meaning 602–1791*, at 603–13 (2009). General warrants allowed government officers to search a person or property for evidence of wrongdoing without specifying what they were looking

for or why they had suspicion to search. *See Sanders v. State,* 2 Clarke 230, 239 (Iowa 1855). The officer did not possess a warrant to search the defendants' trash in this case.

In *Wright,* we examined whether a police officer's warrantless search of a trash bin left out for collection violated article I, section 8. 961 N.W.2d 396, 416–17 (Iowa 2021). In answering this question, we employed two modes of analysis. *Id.* We first considered whether the search violated "positive law," referring to some enacted law or legal doctrine recognized by courts. *Id.* In *Wright,* a municipal ordinance where the defendant lived made it a crime for anyone other than a licensed trash collector to access a trash bin. *Id.* We concluded that in light of the ordinance, the officer committed a trespass by searching the trash without a warrant and thus violated the constitution. *Id.* at 417. We separately considered whether the search violated the defendant's reasonable expectation of privacy. *Id.* at 417–18. We concluded that people maintained a reasonable expectation of privacy in their trash left out for collection and held that the officer's warrantless search thus violated the constitution under this rationale too. *Id.* at 418–19.

**II. A *Wright* Without Teeth.**

The majority in this case holds that a different law—a statute enacted after our decision in *Wright*—now means that an officer's warrantless search of trash left out for collection is constitutionally permissible. But the majority fails to recognize that it is our role, not the legislature's, to construe the Iowa Constitution, while also overlooking *Wright*'s separate holding under the reasonable-expectation-of-privacy test.

**A. *The Judicial Power to Construe the Constitution.*** With Iowa Code § 808.16 (2023), the legislature makes an unabashed attempt to abrogate our

holding in *Wright* and to ensure that warrantless searches of trash do not violate article I, section 8. The legislature's attempt takes several forms.

First, in subsection (1), the statute asserts as a matter of "public policy of this state" that people cannot have a reasonable expectation of privacy in trash placed out for collection. *Id.* § 808.16(1). But the legislature's disagreement with our determination that people *do* have a reasonable expectation of privacy in trash and our conclusion that a warrantless search of trash thus violates constitutional safeguards does not override our court's prerogative to interpret and apply the constitution in cases before us. *See State v. Burns*, 988 N.W.2d 352, 360 (Iowa 2023) ("[T]he Iowa Supreme Court is the 'final arbiter' of what the Iowa Constitution means." (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940))); *Richardson v. Fitzgerald*, 109 N.W. 866, 867 (Iowa 1906) ("As every one knows, it is the province of the Legislature to enact, of the judiciary to expound, and of the executive to enforce, the laws, and any direction by the Legislature that the judicial function shall be performed in a particular way is a plain violation of the Constitution.") The statute's assertion of what public policy is doesn't decide for us the constitutional question. Subsection (1) of the statute thus has no effect on our analysis.

Subsection (2) begins with a statement that a city or county may only regulate waste management to promote "public health and cleanliness," but then states that an ordinance or regulation "shall not be construed by a person to create a reasonable expectation of privacy" in trash placed out for collection. Iowa Code § 808.16(2). The first part of subsection (2) limiting city or county regulations to promote public health and cleanliness, even if it constitutes a proper legislative prerogative, offers nothing relevant to the analysis in this case. The second part of subsection (2) simply asserts, again, that trash ordinances or

regulations do not create a reasonable expectation of privacy in trash placed out for collection. This is ineffectual for the same reasons offered about subsection (1).

Skipping subsection (3) for the moment, subsection (4) declares that an officer may search and seize trash left out for collection "without making an application for a search warrant." *Id.* § 808.16(4). As before, the legislature's disagreement with our determination that people have a reasonable expectation of privacy in trash—and that officers thus need a warrant under the requirement in article I, section 8 to lawfully search it—does not override our court's authority to decide the constitutional question in cases before us. Subsection (4) of the statute thus also has no effect on our analysis.

Subsection (3) states that trash placed out for collection "shall be deemed abandoned property and shall not be considered to be constitutionally protected papers or effects of the person." *Id.* § 808.16(3). The majority concludes that this part of the statute involves a proper legislative prerogative, and it is on this provision that the majority pins its holding. The majority holds that no warrant was needed because, in light of § 808.16(3), people have no constitutional search-and-seizure protections in property that they abandon. Article I, section 8 does not apply to this case at all, in other words, because the trash in John Mandracchia and Charles Amble's bin is abandoned property because the statute said so. And because it was abandoned property, the argument goes, the contents of the trash bin were no longer *their* papers or effects.

But it is for the court, not the legislature, to determine whether conduct is constitutional. Although we "give[] respectful consideration to the legislature's understanding of constitutional language," the supreme court construes the meaning of the constitution's terms and "is the final arbiter of what the Iowa

Constitution means." *Green v. City of Cascade*, 231 N.W.2d 882, 890 (Iowa 1975). The text of article I, section 8 divides the analysis into four questions: (1) Is the subject of the alleged intrusion a person, house, paper, or effect? (2) If so, was it searched or seized? (3) If so, was it the defendant's ("their") person, house, paper, or effect? (4) If so, was the search or seizure unreasonable? *See* Orin S. Kerr, Katz *as Originalism*, 71 Duke L.J. 1047, 1052 (2022). Whether something is an "effect" and whether that effect belongs to someone—is "theirs" for purposes of article I, section 8—is a determination of constitutional dimension reserved for the court in cases before it. "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).

Consider *Junkins v. Branstad*, where a group of legislators challenged the use of the Governor's constitutional line-item veto power. 421 N.W.2d 130, 132 (Iowa 1988) (en banc). The text of the constitution limits the Governor's use of the line-item veto to "an appropriation bill." *Id.* at 131 (quoting Iowa Const. art. III, § 16). The legislators argued that the Governor exercised the veto on legislation that was not an "appropriation bill." *Id.* at 134. In support, the legislators pointed to a statute enacted in the next legislative session that defined the term "appropriation bill" in a way that supported their argument. *Id.* But we rejected that argument, stating that the constitutional question was "not within the province of the legislature to decide." *Id.* "Whatever purposes the legislative definition of 'appropriation bill' may serve, it does not settle the constitutional question." *Id.* at 135. We held that "[t]his determination, notwithstanding the legislative definition, is for the courts." *Id.*

The legislature could not, for instance, end-run the Fifth Amendment to the United States Constitution's protection against the taking of private property

without just compensation by passing a law that says anytime a government entity wants to take private land to build a road, that land "shall not be deemed private property" under the law and thus no compensation for the taking is required. Likewise, the legislature could not end-run the constitutional right to keep and bear arms by passing a statute saying that rifles are not "arms" and thus a statutory restriction on owning a rifle does not implicate article I, section 1A of the Iowa Constitution.

Just as the determination about what constitutes "property" or "arms" under the Fifth Amendment and section 1A are questions of constitutional dimension reserved for the court, so too is whether property constitutes the defendants' ("their") effects under article I, section 8. Section 808.16's assertion about abandonment does not, and cannot, control our court's interpretation and application of the meaning of "their effects" in this case. *See Junkins*, 421 N.W.2d at 135; *Green,* 231 N.W.2d at 890.

If the legislature can alter constitutional protections simply by passing a statute negating a property interest that then *mandates* a particular constitutional application, the constitution is no longer "superior, paramount law, unchangeable by ordinary means." *Marbury*, 5 U.S. (1 Cranch) at 177. The constitution would instead be "on a level with ordinary legislative acts, and like other acts, . . . alterable when the legislature shall please to alter it." *Id.* Shifting legislative majorities would wield an amendment power at odds with the amendment process that the Iowa Constitution itself mandates in article X. "The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts." *W. Va. State Bd. of Educ. v. Barnette,* 319 U.S. 624, 638 (1943) (Jackson, J.). The

majority's decision today collides with bedrock constitutional principles on multiple fronts.

**B. *Getting* Wright *Wrong.*** *Wright* rested on two separate rationales: a positive-law analysis and a reasonable-expectation-of-privacy analysis. 961 N.W.2d at 417–19; *see also State v. Kuuttila*, 965 N.W.2d 484, 486–87 (Iowa 2021) (explaining "[b]oth rationales" on which *Wright*'s holding relied). The majority further stumbles in failing to recognize *Wright*'s second rationale. In *Wright*, we explained that people have a reasonable expectation of privacy in the contents of their trash bins independent of the positive law analysis:

> When a citizen places garbage out for collection in a closed garbage bag, the contents of the bag are private, as a factual matter. The citizen understands, however, that the contents of the bag may be revealed to someone at some point in time. That a citizen may actually lose privacy in certain things or in certain information at some point in the future does not preclude the possibility that a peace officer nonetheless violated the citizen's right to privacy in accessing the same things or information. "Privacy rights do not protect a reasonable expectation that privacy will be maintained, but rather a reasonable expectation that privacy will not be lost in certain ways."

961 N.W.2d at 418–19 (quoting Jeffrey M. Skopek, *Untangling Privacy: Losses Versus Violations*, 105 Iowa L. Rev. 2169, 2174 (2020)). Quoting the LaFave treatise, we stated that "the mere fact that a citizen elects to dispose of his garbage in the customary way by making it available for pickup by a municipal or privately-retained hauler is no basis for concluding that his expectation of privacy as to that garbage is unjustified." *Id.* at 419 (quoting 1 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 2.6(c), at 933 (6th ed. 2020)).

We have relied on this rationale two other times. *See State v. Hahn*, 961 N.W.2d 370, 372 (Iowa 2021); *Kuuttila*, 965 N.W.2d at 486–87. In *State v. Hahn*,

we described *Wright* as holding "that law enforcement officers conducted an unreasonable and thus unconstitutional seizure and search when they seized and searched garbage bags left out for collection without first obtaining a warrant." *Hahn,* 961 N.W.2d at 372. We concluded that "[t]he same rationale" applied to the trash search in *Hahn* and remanded the case. *Id.* But unlike in *Wright,* where the city had an ordinance preventing a person from intermeddling with another's trash bin, no mention of an ordinance (or any other positive law) appears in *Hahn. See id.* at 371–72. And although the city in *State v. Kuuttila* had an ordinance, we also made clear that "[b]oth rationales" from *Wright*—meaning the positive law *and* the reasonable expectation of privacy test—applied. 965 N.W.2d at 486–87. The majority relegates *Hahn* and *Kuuttila* to a footnote and claims that today's decision "is the controlling precedent for reviewing trash pulls," without acknowledging that *Hahn* solely relied on *Wright*'s second rationale and *Kuuttila* applied it too.

The positive law is one, but certainly not the only, approach that we consider in analyzing whether an officer has infringed a person's search-and-seizure rights. *See* Orin S. Kerr, *Four Models of Fourth Amendment Protection*, 60 Stan. L. Rev. 503, 506, 519 (2007). We said as much in *Wright*: "Of course, this is not to say article I, section 8 rises and falls based on a particular municipal law. Municipal laws, like all positive laws, are merely one form of evidence of the limits of a peace officer's authority to act without a warrant." 961 N.W.2d at 417. The reasonable-expectation-of-privacy test that we apply under article I, section 8 remains the overarching test for determining whether a search-and-seizure violation has occurred. *See Hahn,* 961 N.W.2d at 372; *see also Katz v. United States* 389 U.S. 347, 360–61 (1967) (Harlan, J., concurring).

To begin, as we recognized in *Wright*, our trash "contains intimate and private details of life." 961 N.W.2d at 418. Private information about our families, friendships, political activities, religious activities, personal finances, professional engagements, and sexual associations are all potentially on display. Greeting cards, bank statements, church bulletins, voter registration cards, loan documents, health insurance forms, receipts, pregnancy tests, empty prescription bottles—all potentially appear in our trash and all potentially reveal private details about us. Information that is independently protected by law can be revealed in one's trash, too. An empty pill bottle reveals protected health information. *See* 42 U.S.C. §§ 1320d(4) (defining health information to include "any information . . . that . . . relates to the past, present, or future physical or mental health or condition of an individual"), 1320d–6(a) (prohibiting a person from knowingly acquiring health information). A library checkout receipt reveals information not otherwise obtainable without violating state law. *See* Iowa Code § 22.7(13). The same holds true for a student's school records. *See id.* § 22.7(1).

Whether a person has a privacy interest in their trash often raises questions about abandonment. *See, e.g., Wright*, 961 N.W.2d at 437 (Christensen, C.J., dissenting). If people abandon property, it is no longer "theirs" and thus no longer their "effect." *See State v. Bumpus*, 459 N.W.2d 619, 625 (Iowa 1990). In deciding whether someone has abandoned property, we consider whether the alleged abandonment was voluntary. *Id.* Under Iowa law, "[a]bandonment is shown by proof that the owner intends to abandon the property and has voluntarily relinquished all right, title and interest in the property." *Benjamin v. Lindner Aviation, Inc.*, 534 N.W.2d 400, 406 (Iowa 1995) (en banc). Because people have little choice but to put their trash out for

municipal collection, I find the element of voluntariness generally lacking with residential trash.

Unlike today, people at the time of Iowa's founding disposed of their trash on their own and thus could rid themselves of it without exposing it to others. At the time, municipal trash collection was still largely a thing of the future. Municipal trash collection efforts started around the mid-1800s, when it became clear that accumulating garbage was having harmful health effects. Martin V. Melosi, *The Sanitary City: Environmental Services in Urban America from Colonial Times to the Present* 28 (abr. ed. 2008) [hereinafter Melosi, *The Sanitary City*]. But despite America's rapid urbanization during this period, "attempts by American cities to deal with growing amounts of garbage could be described as haphazard at best." *See* Ann E. Carlson, *Recycling Norms*, 89 Cal. L. Rev. 1231, 1254–55 (2001).

As urban areas began to grow in population, the American economy was shifting to producing and selling more consumable products. Melosi, *The Sanitary City* at 114. The items Americans were consuming were also beginning to be packaged, creating more trash. Eduardo M. Peñalver, *The Illusory Right to Abandon*, 109 Mich. L. Rev. 191, 214–15 (2010) [hereinafter Peñalver]. With more people living in more geographically confined spaces producing more trash, by the 1880s, "[t]he 'garbage problem' began to receive public notoriety." Melosi, *The Sanitary City*, at 113. Cities at first struggled with how to go about collecting garbage. *Id.* at 119.

Rural areas were slower adopters of municipal trash collection and instead granted "some liberty to each citizen to select a disposal of his refuse most satisfactory to himself." Rudolph Hering & Samuel A. Greeley, *Collection and Disposal of Municipal Refuse* 618 (1921). People in these areas usually handled

their trash in a traditional agrarian way: they reused it, fed it to farm animals, or would just let it accumulate. *See, e.g.*, *id.*; Peñalver, 109 Mich. L. Rev. at 214–15.

Iowa's experience with trash collection seems to have been typical of the times. Beginning in the mid-1800s, researchers began to survey different cities' sanitation practices. *See* Melosi, *The Sanitary City*, at 43–44. In 1880, the United States Census incorporated this research into reports that it prepared on over 100 cities across the country. *Id.* at 119. The census collected sanitation practice data from six Iowa cities: Burlington, Cedar Rapids, Council Bluffs, Davenport, Des Moines, and Keokuk. George E. Waring, Jr., Dep't of Interior, *Report on the Social Statistics of Cities, Part II: The Southern and the Western States* 707–37 (photo. reprt. 1991) (1887). At the time, Davenport and Des Moines—the two largest Iowa cities that had available data—were the only ones with a municipal trash collection service. *Id.* at 723, 728. The other cities (Burlington, Cedar Rapids, Council Bluffs, and Keokuk) permitted residents to do with their garbage as they pleased. *Id.* at 710, 714, 717, 737. Des Moines, which had a population of 22,408 people, used city workers to remove garbage, but residents were also allowed to dispose of their garbage on their own. *Id.* at 728.

Sanitation practices obviously look very different today. The Iowa legislature, state agencies, and municipalities now regulate various components of the system. *See* 1986 Iowa Acts ch. 1245, §§ 1802, 1806 (codified at Iowa Code §§ 455A.2, .6 (1987)). In 1992, the legislature—for the first time—passed a law that regulated the disposal of trash. *See* 1992 Iowa Acts ch. 1215, § 10 (codified at Iowa Code § 455B.307A (1993)). It prohibited people from discarding their "solid waste"—defined to include "garbage, refuse, rubbish, and other similar discarded solid or semisolid materials"—onto or into any land or water owned by

the state. Iowa Code §§ 455B.301(20), .307A(1) (1993). It also prohibited people from placing their trash into other people's trash bins. *Id.* § 455B.307A.

The Iowa Environmental Protection Commission now regulates disposal methods as well, including the burning of trash. *See generally* Iowa Admin. Code r. 567—23.2. The "open burning" of one's trash is prohibited. *Id.* r. 567—23.2(1). Although there are a number of exemptions to the open-burning prohibition, *see id.* r. 567—23.2(3)(*a*)–(*j*), certain cities, including Des Moines, cannot claim these exemptions, *id.* r. 567—23.2(3). Additionally, local ordinances and regulations can preempt these exemptions. *Id.*; *see also id.* r. 567—23.2(3)(*f*). As a result, even if the state does not prevent open burning in, say, Davenport, the City of Davenport can impose its own prohibition, which it has. *See* Davenport, Iowa, Municipal Code § 15.32.030(B) (2024) ("No person shall ignite . . . an open fire containing any garbage . . . .").

In Des Moines, where the defendants in this case resided, the city provides trash collection services. *See* Des Moines, Iowa, Code of Ordinances § 98-54 (2025). Unless the owner of a house or building can demonstrate that it's unoccupied and uninhabitable, the city will charge for trash collection whether one sets their trash out for collection or not. *Id.* § 98-54(7). Des Moines residents are forbidden from holding onto their trash, as the city's ordinances prohibit the hoarding of items on any premises in Des Moines. *Id.* § 98-60. Des Moines residents also cannot dump their trash within the city. *Id.* § 54-176. Although residents can take their trash to the landfill, doing so subjects even the person's vehicle used to transport the trash to random inspection. *See* Metro Waste Auth., *Landfill Rules & Policies*, https://www.mwatoday.com/locations/metro-park-east-landfill/rules--policies [https://perma.cc/4XTG-6L83].

In short, as Des Moines residents, Mandracchia and Amble could not (1) burn their trash, (2) hoard their trash, (3) dispose of their trash somewhere within the city, (4) dump their trash into water or land owned by the state, or (5) throw it in someone else's trash bin. Short of burying it on their property (not an option for many) or taking it to the landfill themselves (subjecting them to a search of their vehicle), people in Des Moines effectively have one option for their trash: placing it out for municipal collection.

Although not an abandonment case, *Carpenter v. United States* illustrates how our search-and-seizure protections operate when a person lacks a meaningful choice in disclosing information. 585 U.S. 296 (2018). In *Carpenter*, prosecutors sought the cellphone records of several suspects in a string of robberies. *Id.* at 301–02. The prosecutors applied for court orders under the Stored Communications Act, which allows the government to compel a cellphone company to release someone's cellphone records if the government provides a reasonable basis to believe that the records are relevant to an ongoing criminal investigation. *Id.* (quoting 18 U.S.C. § 2703(d)). A magistrate issued the requested order under the Act, forcing Carpenter's cellphone provider to turn over the location information tied to his cellphone use during the period that aligned with the robberies. *Id.* at 302.

The United States Supreme Court held that the location information obtained from the wireless carriers was the product of a search under the Fourth Amendment. *Id.* at 315–16. The holding rested, in part, on the fact that although the decision to carry a cellphone permits a wireless carrier to record almost constant GPS tracking data for a user, the user does not voluntarily disclose his location by carrying a cellphone. *Id.* at 315. After noting how "pervasive and insistent" cellphones are in contemporary life, the Court noted that "[a]part from

disconnecting the phone from the network, there is no way to avoid leaving behind a trail of location data." *Id.* (quoting *Riley v. California*, 573 U.S. 373, 385 (2014)). The Court concluded that "in no meaningful sense does the user *voluntarily* 'assume[] the risk' of turning over a comprehensive dossier of his physical movements." *Id.* (alteration in original) (emphasis added) (quoting *Smith v. Maryland*, 442 U.S. 735, 745 (1979)).

In the same way, Mandracchia and Amble's choice to set out their trash for collection is hardly voluntary. Burying their trash (if they could) or driving it to the landfill themselves (subjecting their vehicle to a search) is even more arduous and impractical than, as *Carpenter* discusses, turning off one's cellphone. *Id.* Even shredding it doesn't guarantee that the government won't be able to piece it back together. *See, e.g., United States v. Scott*, 975 F.2d 927, 928, 930 (1st Cir. 1992) (holding that IRS agents reconstructing shredded documents they found in the defendant's trash did not violate the Fourth Amendment). It goes against reason, in any event, to suggest that the only way to maintain basic privacy in our trash is to become a state of trash hoarders, burners, or shredders.

When residents set out their trash, the situation is more akin to a conveyance than an abandonment because there is one intended recipient for the trash: the trash collector. At a minimum, people maintain ownership over the trash until the intended recipient (the trash collector) claims it. Abandonment generally involves not just voluntary relinquishment but a gap in ownership. "[A]bandoned property becomes, in theory, a *res nullius*, a thing owned by no one." Peñalver, 109 Mich. L. Rev. at 196. A conveyance, on the other hand, involves the conveyor's "ability to direct the property toward a particular person or group of people." *Id.* at 198. When someone provides their property to a repair person, for instance, the owner of the property does not necessarily lose

their privacy interest in it. *See Commonwealth v. Shaffer*, 209 A.3d 957, 976–77 (Pa. 2019) (describing how a person's privacy interest in their computer was not abandoned when they gave it to a computer repair shop). The key difference is that "[t]he intent required for abandonment is the intent to sever one's ties of ownership, not an intent to convey the property to a particular person." Peñalver, 109 Mich. L. Rev. at 197.

**III. Conclusion.**

Because I reject the notion that the new statute requires a finding of abandonment, and because I do not otherwise find abandonment under our ordinary abandonment principles, I would hold that the defendants had a reasonable expectation of privacy in their trash. I would thus hold that the warrantless trash search in this case violated article I, section 8 of the Iowa Constitution, and I would affirm the district court's ruling on this basis.